**Henry S. WEBB, Plaintiff,**

v.

**Sam DISTEFANO, Defendant.**

**No. CV82–L–583.**

United States District Court,
D. Nebraska.

Nov. 23, 1983.

Mark A. Hunzeker, Lincoln, Neb., for plaintiff.

Thomas O. Mumgaard, Asst. City Atty., Omaha, Neb., for defendant.

## MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

URBOM, Chief Judge.

The parties have filed cross motions for summary judgment which present issues of both offensive and defensive collateral estoppel, the former involving assertion of the doctrine against a nonparty to the prior action. As no other evidence has been presented, the only question here is the effect of action taken by this court and the Eighth Circuit Court of Appeals in *Webb v. Arresting Officers,* CV80–L–347 (U.S.D.C. Neb., unreported opinion of September 15, 1982), vacated 713 F.2d 405 (C.A. 8th Cir. 1983), order on remand, CV80–L–347 (U.S. D.C.Neb. October 5, 1983), collectively referred to as *Webb I.*

This action and *Webb I* are based on the same series of events which took place in the Omaha, Nebraska, police station following the plaintiff's arrest on May 13, 1980. In *Webb I* the plaintiff sued several Omaha police officers he claimed had used excessive force in three incidents, the first of which occurred during the booking process, the second during a lineup, and the third in the hallway of a cell-block. In my opinion of September 15, 1982, in *Webb I,* I found that the police had not used excessive force during the first two incidents but that excessive force had been used against the plaintiff when the police were taking him to a cell. The Eighth Circuit panel left untouched these findings, but overturned my legal holding as to the liability of the only officer among the named defendants who was shown to be present during the scuffle in the jail hallway. I dismissed the complaint against Officer Stanzel because the plaintiff had failed to prove that Stanzel had actually participated in the use of excessive force but had proved at most only that Stanzel was present when unidentified officers had used excessive force. The appellate panel vacated and remanded for consideration of damages against Stanzel, holding that a police officer who is present during an unnecessary beating of a prisoner and who fails to intervene is liable himself for any resulting injuries under 42 U.S.C. § 1983. 713 F.2d at 408. I entered an order on remand determining damages in the amount of $2,000.00 against Stanzel for injuries proximately resulting from the use of excessive force in the cell area.

The defendant in the case here, Sam Distefano, was not named as a defendant in

*Webb I*, although my findings of fact in that case indicated that he was one of two officers—the other was Stanzel—who was escorting Webb in the jail hallway when the third struggle occurred. The lawsuit against Distefano was filed shortly after judgment was entered in *Webb I;* the complaint raised only the hallway incident as a basis of liability, but the pretrial order added issues concerning Distefano's possible participation in the incidents in the booking room and the lineup room.

The defendant's motion for summary judgment, filing 28, seeks to estop collaterally the plaintiff from relitigating my finding in *Webb I* that excessive force was not used in the booking room and lineup incidents and asks me to find that the plaintiff is collaterally estopped from claiming that he incurred injuries and damages in excess of $2,000.00. The plaintiff concedes that collateral estoppel bars relitigation of the booking room and lineup issues and· argues that the defendant should be collaterally estopped from challenging the *Webb I* finding that excessive force was used in the cellblock hallway; he also argues against the applicability of collateral estoppel to the damages amount.

■ As the plaintiff recognizes, collateral estoppel bars relitigation of the finding that no excessive force was used in the booking and lineup rooms. Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action, and under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). However, a judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable for the loss. *Restatement (Second) of Judgments* § 49 (1982). While the plaintiff may bring successive claims against multiple defendants liable for the same injury, he ordinarily would be barred from relitigating in actions against successive defendants any issues determined against him in the original suit,· if the issue was actually litigated and determined to be a valid and final judgment and the determination was essential to the judgment. *Id.*, § 29.

■ The Eighth Circuit uses a four-point test for determining whether collateral estoppel is appropriate:

1. Is the issue identical to one in a prior adjudication?
2. Was there a final judgment on the merits?
3. Was the estopped party a party or in privity with a party to the prior adjudication?
4. Was the estopped party given a full and fair opportunity to be heard on the adjudicated issue?

*Oldham v. Pritchett*, 599 F.2d 274, 279 (C.A. 8th Cir.1979); *Gerrard v. Larsen*, 517 F.2d 1127, 1130 (C.A. 8th Cir.1975). *In Webb I*, I addressed the issues of excessive force in the booking and lineup processes and determined them against the plaintiff, who had a full and fair opportunity to litigate those issues and who pursued the adverse determination to the appellate level, to no avail. There is no reason to allow him to raise those factual issues anew in this proceeding.

■ The damages issue presents a more difficult question. In *Webb I*, the plaintiff sought both damages for his actual injury and punitive damages. In my original judgment against the plaintiff I discussed at length the injuries suffered by the plaintiff; on remand, at the direction of the appellate mandate, I further considered which of the plaintiff's injuries were attributable to the use of excessive force in the cell-block hallway. In my October 5, 1983, order I found that $2,000 will reasonably compensate the plaintiff for the injuries proximately resulting from the use of excessive force in the cell area incident. However, I have never made any findings or awards as to Stanzel's liability for puni-

tive damages. In the present action, the plaintiff seeks only damages for bodily harm and "release from pen." Of course, the latter is not a proper remedy in a § 1983 action. The complaint and the pretrial order clearly show that the bodily harm complained of, after elimination of the booking and lineup incidents, is identical to the bodily harm for which the plaintiff was awarded $2,000 in *Webb I.* There, I explicitly separated the injury resulting from reasonable use of force during the three incidents at the police station from the injury resulting from the use of excessive force in the cell-block hallway and awarded damages for all of the unnecessary harm. This was required, because liability was imposed on Stanzel for failing to stop other officers from applying excessive force. Thus, no quantum of injury suffered as the result of excessive force was left uncompensated. The damages awarded in *Webb I* were a necessary finding of fact as to the full and proper compensation for the plaintiff's injuries, and I can see no reason why the plaintiff should be allowed to relitigate this factual issue against a different defendant who is not accused of causing any injury beyond that compensated previously.

■ The plaintiff contends that the damages issue should be reopened in the present case because a victim of a constitutional tort is entitled to at least nominal damages for the deprivation. The implication is that each police officer present committed acts or omissions violating the plaintiff's rights and each is liable for separate nominal damages. This may be true of punitive damages, which are not involved in this case. And it is true that the victim of a constitutional tort will be entitled to nominal damages. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (setting limit of one dollar for damages award absent showing of actual injury caused by procedural due process violation). However, where a plaintiff is compensated for actual injury as the result of such a tort, I know of no authority—and the plaintiff has cited none—which mandates recovery of both compensatory and nominal damages. The cases which have awarded nominal damages in civil rights cases have done so in order to vindicate the rights of the victims where no measurable damages have resulted. E.g., *Carey v. Piphus,* supra, at 266, 98 S.Ct. at 1053. In this case, an award of nominal damages would not serve its usual purpose of keeping the case alive through trial on the merits and determination of the plaintiff's rights, because that will occur anyway; the issues of the defendant's liability and the extent of his responsibility for the damages awarded in the previous lawsuit remain to be resolved. Therefore, the plaintiff is collaterally estopped from relitigating the extent of the damages determined in *Webb I.*

■ The question of the use of excessive force in the cell-block hallway presents a much different issue of collateral estoppel. Except for the cases of *Cauefield v. Fidelity & Casualty Co.,* 378 F.2d 876 (C.A. 5th Cir.1967), cert. denied, 389 U.S. 1009 (1967), and *Gerrard v. Larsen,* 517 F.2d 1127 (C.A. 8th Cir.1975), 1 would have no trouble dispensing with the plaintiff's argument that the defendant should be estopped from relitigating the finding in *Webb I* that excessive force was applied in the cell-block incident. The long-standing general rule of collateral estoppel is that it may not be asserted against a person not a party or in privity with a party to the prior action. *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940). The Supreme Court of the United States has reaffirmed this principle in dicta and has explained that it is based on the due process clause:

> "Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position."

> *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,*

402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971)

Similarly, in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the court based its reasoning for allowing use of offensive collateral estoppel against a party to the previous action, although only at the discretion of the trial court, partly upon the assumption that a plaintiff who was not a party to the previous lawsuit would not be bound by a judgment favorable to the defendant in that action. *Id.*, at 330, 99 S.Ct., at 651. However, the court thereafter cast doubt on the absoluteness of the nonparty rule with its opinion in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). There, the court held that the federal government was estopped from challenging the constitutionality of a state tax on public contract gross receipts in a federal lawsuit brought by the government, where the state courts in a prior action brought by a contractor had upheld the tax and where the federal government, although not a party in the state action, had financed and directed the plaintiff's case in state court.

Against this background appear the *Cauefield* and *Gerrard* cases. *Cauefield* appears to be the first federal court of appeals case in which collateral estoppel was imposed against persons who were not parties to the prior action. See Note, "Collateral Estoppel of Nonparties," 87 Harv.L. Rev. 1485 (1974). In *Cauefield*, a cemetery owner had cleared brush from the cemetery, and forty-one relatives of decedents buried there claimed that the owner had desecrated it. One of the group brought an action in Louisiana state court, but lost when the court found that no desecration had occurred—under state law desecration of any portion of the cemetery is actionable by anyone with an interest in any portion of the cemetery, not just by those interested in the part desecrated. Two other complainants then brought a diversity action in federal court. The Fifth Circuit approved application of defensive collateral estoppel against the federal plaintiffs on the issue of desecration, citing Louisiana cases which

showed a loosening of traditional mutuality rules in this area. The court found three facts to be important in justifying collateral estoppel against a nonparty: the federal plaintiffs had testified in the state action, as had the rest of the forty-one aggrieved relatives; they all had retained the same lawyers; and the federal plaintiffs admitted they could offer no evidence not already presented to the state court.

*Cauefield* and its novel extension of collateral estoppel could be distinguished as a case resting on peculiar state law, see *Blonder-Tongue*, supra, 402 U.S., at 325, n. 13, 91 S.Ct., at 1441, n. 13, were it not for the Eighth Circuit's embracing of it in *Gerrard v. Larsen*, supra. Gerrard was the driver of a car involved in a collision with a car driven by Gibbens. Gibbens died and a passenger in his car was injured. The passenger sued Gerrard and Gerrard brought a third-party action against Larsen as the administrator of Gibbens' estate for contribution; Larsen filed a counterclaim against Gerrard in his capacity as administrator of the estate for damages for Gibbens' suffering before death and on behalf of Gibbens' parents for wrongful death and funeral expenses. The district court severed the counterclaim. In the main action the jury returned a verdict for the passenger against Gerrard and allowed contribution from Gibbens' estate. Contribution was based on a finding that Gibbens' negligence contributed to the accident. The district court then granted summary judgment on the counterclaim in favor of Gerrard, justifying collateral estoppel against the parents on the basis that they were in privity with the administrator because he both defended the contribution action and brought the wrongful death action on behalf of the parents.

The Eighth Circuit rejected the district court's view of privity and reversed the dismissal of the parents' counterclaim, but remanded for determination of whether "functional privity" existed between the parents and the estate. The court recognized that due process considerations forbade application of collateral estoppel

against one not a party or in privity with a party to the prior action and found that the parents were neither parties nor in privity, in the traditional sense of the word. But the court found it necessary to expand the inquiry to what it called "functional privity." In discussing cases which have moved into this area, the court explained:

"In each of these cases, a family or other close relationship, for the purposes of the lawsuit, existed between the unsuccessful plaintiff in the first action and the plaintiff in the later action against the same defendant and permitted that defendant to raise successfully the estoppel defense in the second action.... The courts in these cases approved estoppel because the person precluded had participated in or controlled the prior fair and adequate litigation of the issue sought to be relitigated.

"In light of the changing application of the concepts of res judicata and collateral estoppel, the question of who should be bound by a prior adjudication ought to be resolved on a case by case basis by an examination of underlying facts and circumstances rather than by reliance solely upon the formal status of persons against whom an estoppel is asserted.... Where the doctrine of mutuality has been eroded or abandoned in collateral estoppel cases, the courts employ as a criterion for the application of estoppel whether the party against whom the plea is asserted had been given a fair opportunity to be heard on the issue.... This is also an appropriate criterion for determining whether Gibbens' parents are functionally in privity with Larsen's representative capacity in the prior action and therefore bound by the judgment in that action. We thus must inquire whether Gibbens' parents personally participated fairly and adequately in the prior action through Larsen as administrator of the estate."

*Gerrard v. Larsen,* 517 F.2d at 1134–1135.

The inquiry on remand was to address such questions as whether the parents had the right to exercise any control over Larsen, who selected the attorney for both actions (the parents or the estate's liability insurer), whether the severance of the counterclaim removed the parents from meaningful participation in the first case, and whether the parents had any financial interest in their son's estate. *Id.,* at 1135.

Thus, *Gerrard v. Larsen* requires a broad inquiry into the practical relationships between the present defendant and the defense of *Webb I.* In addition, because the issue here is offensive collateral estoppel—the issue in *Gerrard* was defensive collateral estoppel—the functional privity inquiry must be supplemented by an inquiry as to whether offensive collateral estoppel is appropriate, as mandated by *Parklane Hosiery Co. v. Shore,* supra. The Eighth Circuit has summarized the *Parklane Hosiery* test as follows:

"The Supreme Court indicated that offensive collateral estoppel would not be appropriate if there would be unfairness to the defendant because (1) the defendant had no strong incentive to litigate the prior lawsuit, (2) the judgment relied on was inconsistent with one or more previous judgments in favor of the defendant, or (3) the second action afforded the defendant procedural opportunities unavailable in the first action that could readily cause a different result."

*United States v. Karlen,* 645 F.2d 635, 639 (C.A. 8th Cir.1981)

■ The plaintiff lists the following factors as the basis for his claim that the present defendant was in privity with the defendants in the first action: his interest in adjudicating the occurrence of a violation of rights is "substantially similar" to that of the earlier defendants; it is not unreasonable to expect that he was aware of the previous action; he was listed as a witness for the earlier defendants; and legal representation for all defendants in both actions has been provided by the Omaha city attorney's office.

I find the plaintiff's arguments unpersuasive. While it may be that the earlier defendants vigorously defended against the

excessive force allegations in the first action, there is no indication in the record of either case that Distefano personally participated in any part of the earlier litigation or had any right of control over the attorney defending that action. Unlike the second set of plaintiffs in *Cauefield,* Distefano has never been called to present his version of the incident in court. His name on a witness list would not have given him the right to demand that his testimony be heard in the first trial or to participate in determining trial strategy. There is no indication, other than speculation, that Distefano would be unable to offer anything new on the issue of excessive force. No significant savings of court time would likely result from estopping the defendant on this one issue, because he clearly would be able to relitigate the question of his presence and participation in the cell-block incident, requiring much of the same evidence which would be relevant to determining the use of excessive force.

A consideration underlying the allowance of defensive collateral estoppel by the Supreme Court in *Montana v. United States,* supra, and by the Fifth Circuit in *Cauefield* was the avoidance of forum-shopping by a nominal nonparty who had exercised actual control over the prosecution of the first action in state court and, losing there, seeks a different determination on the same evidence in federal court. By contrast, the Sixth Circuit struck down the use of defensive collateral estoppel against an airplane collision victim by a plane owner who had been exonerated in an earlier action by a different victim in the same court, where the second plaintiff had not joined in strategy planning sessions between the first plaintiff and other plaintiffs with pending cases. *Humphreys v. Tann,* 487 F.2d 666 (C.A. 6th Cir.1973). Although the Sixth Circuit, unlike the Fifth, held firm to the traditional rule of collateral estoppel against a nonparty, I believe that the result in *Humphreys* would have been the same, applying the *Gerrard* functional privity test.

I recently applied the *Gerrard* principle in a defensive collateral estoppel context in *Kaufman v. Chamberland,* CV82–L–638 (unreported memorandum of August 24, 1983, U.S.D.C.Neb.). The precursor of that case was an action by the estate of the driver of a car against the driver and owner of a truck with which the car had collided. The jury found that the truck driver had not been negligent, but the driver of the car had been. The passenger in the car then sued the truck driver and owner for injuries received in the same accident. I held that the passenger could not be estopped from relitigating the negligence issue, because there was no functional privity created by participation in the prior lawsuit, leaving the normal due process rule against estoppel of a nonparty free to operate. While there are more indicia of participation in the prior lawsuit shown here, they are not enough to establish functional privity.

My conclusion that collateral estoppel is not appropriate on the issue of excessive force in the cell area is bolstered by the first factor of the *Parklane Hosiery* test for offensive use of the doctrine. Not only did Distefano lack a strong incentive to litigate the prior lawsuit, he had a strong incentive to disassociate himself from the first action so as to avoid all liability should he not be added as a defendant. His interest then was to avoid having his day in court. While collateral estoppel may be appropriate against nonparties defensively because the plaintiff or counterclaimant in the second action could have joined the first action with no risk other than denying himself a possible second bite at the apple in another forum, it would violate the fundamental sense of fairness inherent in the due process clause to impose collateral estoppel offensively against a defendant who had no reason to become involved in the first action and whose omission from the list of parties in the first action was the result of inadequate discovery on the part of the plaintiff.

The motion of the plaintiff also asks that I take judicial notice of the fact that excessive force was used against the plaintiff in the cell area. I cannot do so. Judicial

notice in these circumstances would be based upon precisely the same grounds as collateral estoppel. It would be no fairer to apply one than the other.

IT THEREFORE IS ORDERED:

1. That the defendant's motion for partial summary judgment, filing 28, is granted; and

2. That the plaintiff's motion for summary judgment, filing 29, is denied.