[No. A110023. First Dist., Div. One. Jan. 30, 2006.]

JAMES RODGERS, Plaintiff and Appellant, v.
SARGENT CONTROLS & AEROSPACE, Defendant and Respondent.

84

**COUNSEL**

Brayton * Purcell, Alan R. Brayton, Gilbert L. Purcell, Lloyd F. LeRoy, David L. Fiol and Nance F. Becker for Plaintiff and Appellant

Carroll, Burdick & McDonough, James P. Cunningham, Laurie J. Hepler and Lee G. Sullivan for Defendant and Respondent.

OPINION

**SWAGER, J.**—The trial court granted respondent's motion for summary judgment and dismissed appellant's action for personal injuries caused by asbestos exposure. The court determined that appellant is bound by findings in prior superior court cases that respondent cannot be found liable to appellant as a successor entity to Arnot Marine Corporation. We conclude that the doctrine of collateral estoppel cannot be applied to appellant, and therefore remand the case to the trial court for determination of the successor liability issue on the merits.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Appellant filed the present personal injury action against respondent and other named defendants on December 5, 2000. The complaint alleged that during the course of appellant's employment duties he was exposed to "asbestos and asbestos-containing products," which caused him to develop asbestosis and other lung damage. Respondent Sargent Controls & Aerospace (respondent or Sargent) was alleged to be liable to appellant as a successor in interest to other corporate entities: Sargent Industries, Inc., Kahr Bearing Corporation (Kahr), Aetna Steel Products Corporation (Aetna), and Arnot Marine Corporation (Arnot).

Following discovery, respondent moved for summary judgment on the ground, among others, that it was not a successor in interest or alter ego of Arnot, which was the entity alleged to be one of the sources of appellant's asbestos exposure.[1] Respondent pointed out in support of the summary judgment motion that "in two separate actions in the San Francisco Superior Court" brought by other plaintiffs represented by appellant's counsel, *Vasen v. Alta Building Materials* (Super. Ct. S.F. City & County, No. 312211) (*Vasen*), and *Pena v. Asbestos Defendants* (Super. Ct. S.F. City & County, No. 303548) (*Pena*), the issue of corporate succession and assumption of liability was adjudicated and resolved in its favor following evidentiary hearings.[2] Respondent claimed that under collateral estoppel principles appellant was barred from relitigating the issue of successor liability, and a complete defense to the action was established. In addition, respondent claimed that under the evidence presented Sargent did not acquire Arnot or its liabilities, and therefore

---

[1] Respondent also asserted that appellant failed to offer any admissible evidence that he was exposed to asbestos-containing products installed by Arnot.

[2] In *Vasen*, the trial court found after trial that the plaintiff failed to prove an assignment of the liabilities of Arnot to Kahr and later Sargent; and in *Pena*, the trial court granted Sargent's summary judgment motion upon a finding of "no triable issue of fact regarding assumption of liability by fact or law of Arnot . . . by Sargent . . . ."

incurred no liability as a successor corporation. In opposition to the motion appellant argued that respondent failed to establish the requisite identity of the parties to invoke the collateral estoppel doctrine.

The evidence pertinent to the summary judgment motion indicated that in 1961 appellant began his employment with Lorentzen & Co. as an "apprentice" in the field of insulation work in the Bethlehem Shipyard in San Francisco. Appellant's employment duties consisted of mixing and delivering insulation products used in the construction of two President Line ships, and "then performing cleanup." In the course of his duties appellant regularly operated in close proximity to "joiner workers" employed by Arnot, who cut and installed "Marinite panels" in the ships that contained asbestos fiber. Arnot was engaged in the performance of joiner work at shipyards.

In 1961, the net assets of Arnot, a division of Aetna, and the capital stock of its subsidiary corporation Marine Development, Inc., were purchased by Kahr in exchange for unissued common stock. Kahr was a company engaged in the manufacture and sale of bearings for the aircraft industry, but the acquisition included Arnot marine division. Thereafter, Arnot operated as a division of Kahr. Arnot ceased business operations in 1967, but did not dissolve as a corporate entity.

In February of 1969, respondent's predecessor, Sargent Industries, Inc., purchased 488,933 of the common outstanding shares of Kahr from a company known as GAC Corporation. Pursuant to the stock purchase agreement GAC promised to indemnify Sargent against all claims arising from "the marine division of the Corporation (which discontinued operations in 1967) whether or not disclosed." In the agreement GAC also warranted that Kahr did not have any liabilities as of December 31, 1968, save a claim listed for a debt in the amount of $38,144.29 owed by Arnot to a company engaged in a bankruptcy proceeding. The agreement also noted a creditor's claim filed by Arnot in the same bankruptcy proceeding.[3] Appellant did not dispute that Sargent assumed no tort liabilities from Kahr under the stock purchase agreement.

In December of 1973, the board of directors of Sargent merged Kahr into Sargent, and resolved to purchase the outstanding shares of Kahr not yet held by the parent company—then less than 10 percent. Kahr was thereafter treated as a division of Sargent.

The trial court found that following the rulings in the *Vasen* and *Pena* cases appellant is collaterally estopped in the present action from claiming that

---

[3] The "Arnot Marine Division" of Kahr subsequently sought and obtained *partial payment of* the bankruptcy claim.

"Sargent is the corporate successor" of Arnot. Based upon the lack of any successor liability, respondent's motion for summary judgment was granted, and judgment in favor of respondent was entered. This appeal followed.

## DISCUSSION

Appellant challenges the trial court's ruling that he is precluded under collateral estoppel principles from litigating the merits of the issue of respondent's liability to him as a successor corporation of Arnot. Appellant focuses upon the lack of identity of parties in the prior and current actions to argue that the requirements of collateral estoppel were not met by respondent. He recognizes that the collateral estoppel doctrine had been extended to those "in privity" with parties to a prior action, but maintains that his only connection with the cases in which lack of successor liability was found— that he is represented by the "same counsel" as the "otherwise unrelated parties"—does not suffice to foreclose him from litigating an issue previously resolved in favor of respondent. Appellant therefore claims that "the doctrine of collateral estoppel was improperly applied by the trial court" to decide the summary judgment motion, "and its order and judgment must be reversed."

"The standard for deciding a summary judgment motion is well-established, as is the standard of review on appeal. '[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]" (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 572 [32 Cal.Rptr. 3d 244].)

"Summary judgment is an appropriate remedy when the doctrine of collateral estoppel refutes all triable issues of fact suggested by the pleadings and supporting documents. [Citation.] We review the trial court's decision de novo." (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1335 [79 Cal.Rptr.2d 763].)

I. *The Claim of Waiver of the Collateral Estoppel Defense.*

■ As a threshold matter we find that respondent did not waive the issue of collateral estoppel by failing to plead it as an affirmative defense, as asserted by appellant. We observe that only the preclusion of relitigation of *claims* pursuant to the principles of *res judicata* is an affirmative defense that must be pled or otherwise raised in the trial court to avoid waiver. (*Dillard v. McKnight* (1949) 34 Cal.2d 209, 219 [209 P.2d 387]; *David v. Hermann*

(2005) 129 Cal.App.4th 672, 683 [28 Cal.Rptr. 3d 622]; *Walton v. City of Red Bluff* (1991) 2 Cal.App.4th 117, 131 [3 Cal.Rptr.2d 275].) "[R]es judicata (precluding the relitigation of claims) must be pleaded, while collateral estoppel (a subset of res judicata precluding the relitigation of issues) need not be." (*Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 758 [6 Cal.Rptr.2d 27].) "[C]ollateral estoppel is waived if not *raised* in the trial court." (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1185 [5 Cal.Rptr.3d 615], italics added.) Collateral estoppel as a defense need not be alleged in an answer or other responsive pleading, particularly where, as here, the evidence to support it—that is, a prior adjudication of the issue—did not then exist. " 'A defense founded upon the conclusiveness of a former adjudication must be either pleaded *or proved.* [Citations.] Such defense is waived if not raised *either by the pleadings or the evidence.* [Citations.]' [Citation.]" (*People v. Neely* (1999) 70 Cal.App.4th 767, 782 [82 Cal.Rptr.2d 886], italics added.) "Where a party joins issue on a question previously litigated or voluntarily opens an investigation of matters which he might claim to be concluded by a prior judgment, he will be held to have waived his right to assert the benefit of the former adjudication and the case will be determined without regard therefor." (*Dillard v. McKnight, supra,* at p. 219.)

Here, the issue of successor liability had not been resolved in the other cases until after respondent filed an answer to appellant's complaint in February of 2001. Respondent then raised the issue of the collateral estoppel effect of orders in the *Vasen* and *Pena* cases in its summary judgment motion, in conjunction with the alternative contention that if the prior rulings were not considered binding, successor liability was nevertheless negated by the evidence. Respondent proceeded to present and litigate the issue of successor liability, but not without also claiming as a preliminary matter that the issue had been conclusively determined in previous litigation. No waiver of the issue occurred, so we proceed to determine whether collateral estoppel operates to foreclose appellant from seeking recovery from respondent as a corporate successor of Arnot.

II. *The Effect of the Prior Rulings in Other Cases on the Successor Liability Issue.*

■ Issue preclusion by collateral estoppel "prevents 'relitigation of issues argued and decided in prior proceedings.' [Citation.]" (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481 [111 Cal.Rptr.2d 870]; see also *Bob Baker Enterprises, Inc. v. Chrysler Corp.* (1994) 30 Cal.App.4th 678, 686 [36 Cal.Rptr.2d 12].) The doctrine "rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the

harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation." (*Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 637 [134 P.2d 242]; see also *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 [71 Cal.Rptr.2d 77].)

" 'Traditionally, collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." . . .' [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1215, 1240 [32 Cal.Rptr.3d 838, 117 P.3d 544]; see also *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1015 [48 Cal.Rptr.2d 174].) "In addition to these factors, . . . the courts consider whether the party against whom the earlier decision is asserted had a 'full and fair' opportunity to litigate the issue." (*Roos v. Red* (2005) 130 Cal.App.4th 870, 880 [30 Cal.Rptr. 3d 446].) Collateral estoppel will not be applied "if injustice would result or if the public interest requires that relitigation not be foreclosed." (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902 [160 Cal.Rptr. 124, 603 P.2d 41].) To determine whether to preclude relitigation on collateral estoppel grounds, judicial notice may be taken of a prior judgment and other court records.[4] (*Kirkpatrick v. City of Oceanside* (1991) 232 Cal.App.3d 267, 281 [283 Cal.Rptr. 191]; *Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 486 [143 Cal.Rptr. 772].)

The only element of collateral estoppel in dispute in the present appeal is the identity-of-parties requirement.[5] " '[T]he party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citation.]" (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745].) Appellant was not a party to the actions in which Sargent was found to have no successor liability, so respondent's defense of collateral estoppel must be based upon the concept of privity.

■ "The concept of privity for the purposes of . . . collateral estoppel refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the

---

[4] As was done here. We grant appellant's request for judicial notice filed July 18, 2005.

[5] The elements of identity of issues and a final adjudication of the issue on the merits are established.

doctrine of collateral estoppel. [Citations.]' [Citations.] ' "This requirement of identity of parties or privity is a requirement of due process of law." [Citation.] . . .' [Citations.]" (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn., supra,* 60 Cal.App.4th 1053, 1069–1070; see also *Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 399 [134 Cal.Rptr.2d 689].)

"Even if these threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles." (*Gikas v. Zolin, supra,* 6 Cal.4th 841, 849.) " '[T]he determination whether a party is in privity with another for purposes of collateral estoppel is a policy decision.' [Citations.] 'Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case [assuming the other requirements are satisfied]; there is no universally applicable definition of privity.' [Citations.]" (*Ibid.*) "In the final analysis, the determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate. [Citation.] ' "Whether someone is in privity with the actual parties requires close examination of the circumstances of each case." [Citation.]' [Citation.]" (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn., supra,* 60 Cal.App.4th 1053, 1070.) " 'We review the court's conclusion of privity de novo . . . because the issue, which ultimately involves the requisites and limits of due process, is a legal one.' [Citation.]" (*Victa v. Merle Norman Cosmetics, Inc.* (1993) 19 Cal.App.4th 454, 464 [24 Cal.Rptr.2d 117].)

We have no quarrel with the proposition advanced by respondent that appellant's interests in exposing Sargent to liability as a successor corporation are comparable to those of the plaintiffs in the *Vasen* and *Pena* cases. Further, those common interests appear to have been represented in the prior cases. "A party is adequately represented for purposes of the privity rule 'if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action. [Citation.]' [Citation.] We measure the adequacy of 'representation by inference, examining whether the . . . party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that . . . party had a strong motive to assert that interest. . . .' [Citation.]" (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn., supra,* 60 Cal.App.4th 1053, 1070–1071.) The plaintiffs in the *Vasen* and *Pena* cases had the same motive to obtain a finding of successor liability as appellant does here, and were represented by the same attorneys.

We also agree that imposing issue preclusion would further the cognizable interests of avoiding harassment of respondent with repeated litigation, reducing the possibility of inconsistent judgments, and promoting

judicial economy.[6] (See *People v. Sims* (1982) 32 Cal.3d 468, 488–489 [186 Cal.Rptr. 77, 651 P.2d 321].) That does not, however, end the inquiry. " '[C]ollateral estoppel may be applied only if due process requirements are satisfied. [Citations.] In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication.' " (*Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1155 [81 Cal.Rptr.2d 155], quoting from *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098]; see also *George F. Hillenbrand, Inc. v. Insurance Co. of North America* (2002) 104 Cal.App.4th 784, 826 [128 Cal.Rptr.2d 586].) " 'The "reasonable expectation" requirement is satisfied if the party to be estopped had a proprietary interest in and control of the prior action, or if the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for the party to be estopped. [Citations.] Furthermore, due process requires that the party to be estopped must have had a fair opportunity to pursue his claim the first time. [Citation.]' [Citation.]" (*Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128, 154 [77 Cal.Rptr.2d 642].) "In deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need to minimize repetitive litigation and prevent inconsistent judgments." (*Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1788 [53 Cal.Rptr.2d 725]; see also *Sutton v. Golden Gate Bridge, Highway & Transportation Dist., supra,* at p. 1155.)

Appellant did not have any proprietary interest in the *Vasen* and *Pena* cases. While he had a theoretical "interest" in the resolution of the successor liability issue in the prior cases—in that an outcome favorable to the plaintiffs would have been binding upon Sargent—he had neither incentive to intervene in those actions nor reason to expect he would be bound by decisions in which he did not participate. (*Old Republic Ins. Co. v. Superior Court, supra,* 66 Cal.App.4th 128, 154–155; *Lynch v. Glass* (1975) 44 Cal.App.3d 943, 949–950 [119 Cal.Rptr. 139].) " 'A nonparty should reasonably be expected to be bound if he had in reality contested the prior action even if he did not make a formal appearance,' for example, by controlling it. [Citations.] Furthermore, privity appertains 'against one who did not actually appear in the prior action . . . where the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for a nonparty.' [Citation.]" (*Victa v. Merle Norman Cosmetics, Inc., supra,* 19 Cal.App.4th 454, 464.) The plaintiffs in the *Vasen* and *Pena* cases did not act as appellant's

---

[6] We observe that collateral estoppel, if applied, will invariably promote judicial economy and reduce the possibility of inconsistent judgments.

representatives, and appellant certainly had no control over or even impact upon the litigation that produced the decisions in favor of respondent. (*Old Republic Ins. Co. v. Superior Court, supra,* at p. 155; *Aronow v. LaCroix* (1990) 219 Cal.App.3d 1039, 1052 [268 Cal.Rptr. 866].) Although appellant, at least through his attorney, must have been aware of the prior litigation, he did not stand in a close relationship with the other two plaintiffs, had no control over the proceedings in the other cases, and cannot be charged with notice that he avoided the prior proceedings at his peril. (*Lynch v. Glass, supra,* at pp. 949–950.)

That appellant is represented by the same counsel as were the plaintiffs in the prior actions does not, we conclude, suffice to extend the doctrine of privity to his case. In *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 298–299 [17 Cal.Rptr.3d 26], the defendant law firm which represented an acquiring company in a merger transaction argued that a summary judgment obtained in its favor on fraud claims brought by three shareholders in earlier lawsuits barred the identical fraud claim by the plaintiff, also a shareholder, under the doctrine of res judicata. The defendant pointed out that the plaintiff "is also a former shareholder . . . , his fraud claim is the same as their claims, he knew about their lawsuits, *and he is using the same attorney,*" thus the relationship is " 'sufficiently close' to justify application of the principle of preclusion . . . ." (*Id.,* at p. 299, italics added.) Despite the common interests of the plaintiffs in the two actions and their shared counsel, the court declined to apply the concept of privity to Vega's case. The court explained: "The cases uniformly state that, in addition to an identity or community of interest between the party to be estopped and the losing party in the first action, and adequate representation by the latter, 'the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication.' [Citation.] [¶] We discern no basis for concluding Vega 'should reasonably have expected to be bound by' the adjudication of lawsuits in which he did not participate in any way, in which he had no proprietary or financial interest, and over which he had no control of any sort. [Citations.] The only relationship between Vega and the prior lawsuit is that he and the plaintiffs in those suits were shareholders in the same company. We are aware of no precedent for finding this to be a 'sufficiently close' relationship to justify application of the principle of preclusion, and we decline to create one." (*Ibid.*)

 We also conclude that representation of different plaintiffs in different cases by the same attorneys is not a factor that justifies imposition of collateral estoppel to preclude litigation of an issue by appellant as a nonparty to the prior actions, at least without evidence that through his attorney he participated in or controlled the adjudication of the issue sought to be relitigated. (*Webb v. Distefano* (D.Neb. 1983) 575 F.Supp. 639, 644–645.) To find that an identity of attorneys presenting the same issue on behalf of

different parties results in issue preclusion would promote attorney shopping, and tend to prevent parties from obtaining representation by chosen counsel familiar with an issue or matter in litigation. And to impose issue or claim preclusion essentially on the basis of prior adjudication of an identical issue would ignore the identity-of-parties requirement of collateral estoppel that is predicated upon due process principles. The United States Supreme Court has held that litigants or those in privity with them who have "never appeared in a prior action" "may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position." (*Blonder-Tongue v. University Foundation* (1971) 402 U.S. 313, 329 [28 L.Ed.2d 788, 91 S.Ct. 1434]; see also *Humphreys v. Tann* (6th Cir. 1973) 487 F.2d 666, 671; *Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d 865, 874; *Children's Hospital v. Sedgwick, supra,* 45 Cal.App.4th 1780, 1785.)

Respondent directs our attention to *Cauefield v. Fidelity and Casualty Company of New York* (5th Cir. 1967) 378 F.2d 876 (*Cauefield*), as illustrative of "how collateral estoppel can and should be applied in circumstances very analogous to those here." In *Cauefield,* a grave desecration case brought by relatives of those buried in a cemetery was stayed in federal court while a Louisiana state court action, referred to as the *"Thomas* case," went forward. (*Id.,* at p. 877.) Following trial in state court the jury found that no desecration occurred, and the verdict was affirmed on appeal. The issues subsequently presented in the federal court case were "identical to those already tried in the state court," the "same relief" was sought in both cases (*ibid.*), both sets of plaintiffs retained the same lawyers, the second set of plaintiffs actively participated as witnesses in the first trial and conceded that the evidence "they would be able to produce would not differ in the least from that which they themselves and the other relatives presented and which was passed on" in the state court action against the plaintiffs. (*Id.,* at p. 878.) The indefinite continuance granted in the federal case specifically to await resolution of the state action also indicated, the court pointed out, "that the *Thomas* case tacitly was intended to resolve all the numerous identical claims that the cemetery had been desecrated." (*Id.,* at p. 877.)

The court in *Cauefield* recognized that the "doctrine of res judicata plainly does not apply" in this case, which in Louisiana "uncompromisingly" demanded "identity of parties," but found that the federal court case was foreclosed by the "common-law concept recognized in Louisiana" of "judicial estoppel," which had fashioned "exceptions" to the rigid identity-of-parties requirement. (*Caufield, supra,* 378 F.2d 876, 878.) The court was convinced, however, "that presented with the unusual facts of the case before us, the Louisiana courts also would find that appellants are estopped by the state court judgment in order to preclude relitigation of the desecration issue. In reaching

this opinion, we think it significant that the nature of this issue is such that desecration could have been established in the *Thomas* case by evidence of any relative, including the evidence offered by appellants, that any part of the cemetery had been desecrated. We reiterate that appellants admit that they can come forward with no evidence which was not produced at the Thomas trial. Under these circumstances, we are further convinced that absolutely nothing would be gained were appellants permitted to pursue their action in the federal courts. We therefore hold that under the particular facts of this case the district court correctly applied the doctrine of judicial estoppel in granting the motion to dismiss." (*Id.*, at p. 879.)

We are not in this appeal presented with consideration of the Louisiana "judicial estoppel" doctrine. We further find that the "unusual facts" upon which the decision in *Cauefield* rested are absent here and compel a different result. (*Humphreys v. Tann, supra,* 487 F.2d 666, 670–671; *In re Nissan Motor Corp. Antitrust Litigation* (S.D.Fla. 1979) 471 F.Supp. 754, 758–759.) While an identity of attorneys exists, the plaintiff in the present action did not present testimony or otherwise participate in any part of the *Vasen* and *Pena* cases. (*Webb v. Distefano, supra,* 575 F.Supp. 639, 645.) Further, unlike the conceded situation in *Cauefield*, appellant has offered some additional evidence to support his claim of successor liability that he did not have the opportunity to present in the prior cases. And finally, again in contrast to *Cauefield*, nothing in the record suggests any "tacit agreement" that the *Vasen* and *Pena* cases were intended to resolve all of the identical claims against Sargent. (*Benson and Ford, Inc. v. Wanda Petroleum Co.* (5th Cir. 1987) 833 F.2d 1172, 1175–1176.)

We understand respondent's frustration with the burden that falls upon a defendant repeatedly forced to adjudicate with the same attorneys issues already resolved in its favor. Nevertheless, we cannot expand the concept of privity beyond its contemplated and justified bounds where to do so would run afoul of due process considerations that limit the scope of issue preclusion. (*Humphreys v. Tann, supra,* 487 F.2d 666, 671; *In re Nissan Motor Corp. Antitrust Litigation, supra,* 471 F.Supp. 754, 759; *Vega v. Jones, Day, Reavis & Pogue, supra,* 121 Cal.App.4th 282, 298–299.) We note, however, that attempted relitigation of an identical issue that has been previously unsuccessful may at some point—at least without the benefit of favorable new evidence—furnish grounds for imposition of sanctions under Code of Civil Procedure section 128.5, or other statutes providing for an award of reasonable expenses, including attorney fees, for frivolous, bad faith, or unmeritorious actions, motions or pleadings.

## DISPOSITION

Accordingly, judgment is reversed and the case is remanded to the trial court with directions to consider the merits and resolve the issue of Sargent's liability to appellant as a successor in interest of Arnot.[7] The parties are to bear their own costs on appeal.

Marchiano, P. J., and Margulies, J., concurred.

On February 7, 2006, the opinion was modified to read as printed above.

---

[7] We of course express no opinion on how the issue should be determined, and we decline to resolve the issue on the record before us. We are not a factfinding court, and we are reluctant to decide an issue of fact that was not addressed by the trial court, particularly where questions of the admissibility of evidence were also not decided below.