Filed 4/14/23  In re C.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| In re C.B. et al., Persons Coming Under the Juvenile Court Law. | C096515 |
| CALAVERAS COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. 19JD6153, 19JD6154) |
| Plaintiff and Respondent, | |
| v. | |
| M.B. et al., | |
| Defendants and Appellants. | |

In this third appeal by appellants C.B. (mother) and M.B. (father), parents again appeal from the juvenile court's order terminating their parental rights over the minors Ca.B. and F.B.  In parents' first appeal, *In re C.B.* (Sept. 29, 2021, C092938) [nonpub. opn.] (*In re C.B. I*), we reversed the juvenile court's order terminating parental rights and remanded the case for the juvenile court to reconsider the beneficial parental relationship exception to adoption in light of *In re Caden C.* (2021) 11 Cal.5th 614.

1

Upon remand, the juvenile court granted mother's request for a bonding study but denied parents' petitions for modification under Welfare and Institutions Code section 388[1] requesting reinstatement of visitation, family maintenance or reunification services, and/or return of the minors. Parents appealed the denial of their petitions for modification in their second appeal, *In re C.B.* (Jan. 30, 2023, C095535) [nonpub. opn.] (*In re C.B. II*), and this court affirmed the juvenile court's order.[2]

While parents' second appeal was pending, the juvenile court held a new section 366.26 hearing and, again, terminated parental rights. Parents appealed and, in this third appeal, which was briefed by appellants prior to the issuance of our opinion in the second appeal, parents revisit their contention that the juvenile court erred in denying their petitions for modification seeking reinstatement of visitation. They also contend the bonding study was insufficient because the experts who performed the study did not observe an in-person visit between parents and the minors as part of the study. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We provide a limited overview of the facts and proceedings, which were largely set forth in our prior opinions. As pertinent here, it is sufficient to recount that, in February 2019, Calaveras County Health and Human Services Agency (the Agency) filed a section 300 petition on behalf of minors Ca.B. (then age 22 months) and F.B. (then age seven months). The juvenile court took jurisdiction, declared the minors dependent

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Mother filed a petition for review with the California Supreme Court, which was denied. (*In re C.B.* (Jan. 30, 2023, C095535) [nonpub. opn.], review den. Apr. 12, 2023, S278541.) Father filed a joinder to the petition on March 2, 2023.

At the parties' request, we take judicial notice of our opinion in *In re C.B. I*, *supra*, C092938 and our opinion and the California Supreme Court's order denying review in *In re C.B. II*, *supra*, C095535. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

2

children of the court, removed them from parental custody, and provided reunification services. Parents were provided twice-weekly visitation with the minors.

The minors were returned to parental custody with family maintenance services in August 2019, but were removed again after a protective custody warrant was issued in October 2019. The minors were placed in the same foster-adoptive home in which they had been previously placed. Parents were again provided twice-weekly visitation with the minors. Parents failed to reunify, and services were terminated in May 2020. Visitation was reduced to one hour per week for one month and then decreased to every other week in accordance with the best interests of the minors.

A contested section 366.26 hearing took place on October 7, 2020. The juvenile court found the minors were likely to be adopted and that neither the beneficial parental relationship exception nor the sibling relationship exception to adoption applied.[3] The juvenile court terminated parental rights and visitation. Parents appealed. On appeal, we reversed the juvenile court's October 7, 2020 orders terminating parents' parental rights. We remanded the matter for a new section 366.26 hearing in light of the then recent Supreme Court decision in *In re Caden C.*, *supra*, 11 Cal.5th 614, which clarified the process and standards for determining whether parents have established the beneficial parental relationship exception to adoption.

Following remand, mother and father each filed section 388 petitions to change the October 7, 2020 orders, seeking reinstatement of visitation and services. Mother also filed a request for a bonding study. Mother's counsel argued the propriety of granting visitation and her disadvantage in the bonding study if it was not granted. The juvenile court set the section 388 petitions for hearing. Prior to the section 388 hearing, the juvenile court granted mother's request for a bonding study.

---

[3]     The minors' older half sibling was also removed from the home and ultimately placed with her father.

On December 14, 2021, the juvenile court held a hearing on the petitions for modification. The juvenile court concluded it did not see a change in circumstances that was in the minors' best interest to reinstate visitation pending the bonding study and denied the petitions. The juvenile court continued the section 366.26 hearing to March 22, 2022, to await the results of the bonding study. Parents appealed and we affirmed the denial of parents' section 388 petitions, which had requested visitation. (*In re C.B. II*, *supra*, C095535.)

While parents' appeal from the orders denying their section 388 petitions was pending, the bonding study was completed, and the juvenile court held a new section 366.26 hearing.

The bonding study was completed by Dr. Kristen Gray and Dr. Blake Carmichael of CAARE Diagnostic and Treatment Center and UC Davis Children's Hospital. They did not observe parents and the minors together as they were of the opinion that "the potential negative consequences of holding the observation, coupled with the limited information that could be obtained, outweighed the benefits of holding the observation." Instead, they assumed for purposes of the assessment that the visit would have gone well and also relied on the documentation, collateral sources, the parents, and others to put together a "fund of knowledge." The bonding study concluded "that the children have formed a weak and primarily negative relationship with [parents]." The study went on to state "discontinuing contact between [the minors] with [parents] would likely not negatively affect [the minors'] long-term well-being." (Boldface & italics omitted.)

The social worker testified and maintained his position that the minors are adoptable. No other evidence was presented. The juvenile court found by clear and convincing evidence that the minors are adoptable; found the beneficial parental relationship exception to adoption did not apply, specifically finding it would not be detrimental to the minors to terminate the parental relationship; and terminated parental rights.

4

Parents appealed.  The matter was fully briefed in this court on March 10, 2023.

DISCUSSION

Mother argues that the "erroneous denial of parent-child visitation, including during the bonding study ordered to observe the relationship," violated her due process rights because it compromised her ability to establish the beneficial parental relationship exception to adoption.  Father, in his opening brief preceding resolution of the second appeal, argued that if parents prevail in their second appeal, the order terminating parental rights must be set aside as well.  Parents reassert their contention, made in their second appeal, that the juvenile court erred in denying their request to reinstate visitation with the minors.  They also complain that the lack of visitation invalidated the legitimacy of the bonding study.  Each parent also joins in the other's arguments.

I

*Denial of Petition for Modification*

The basis for parents' contentions is the alleged "*erroneous* denial of parent-child visitation."  (Italics added.)  Parents again, as they did in their second appeal (*In re C.B. II*, *supra*, C095535), assert that the juvenile court *erred* in denying their request for visitation on remand after their first appeal (*In re C.B. I*, *supra*, C092938).  Respondent notes that, since parents' opening briefs were filed, this court rejected parents' arguments in the second appeal that the denial of visitation was error.  Respondent argues parents should not now be permitted to reargue the same points they argued in their second appeal under the doctrine of issue preclusion.  Mother argues our previous opinion in *In re C.B. II*, *supra*, C095535 does not resolve the controversy because, at the time we resolved the issues in *In re C.B. II*, *supra*, C095535, the prejudice resulting from the lack of visitation was only imminent—and now, in her opinion, it has occurred.

We addressed and rejected parents' contentions of error in the denial of their petitions seeking visitation while the bonding study was being completed, including their argument that the lack of visitation would undermine their attempt to prove the beneficial

5

parental relationship exception, in *In re C.B. II*, *supra*, C095535, which is now final.  We need not address those same arguments again; *In re C.B. II*, *supra*, C095535 is law of the case.[4]  (*Ibid*.; *People v. Stanley* (1995) 10 Cal.4th 764, 786-787.)  And the doctrine of issue preclusion prevents relitigating of these same points that were argued and decided in parents' second appeal.  (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 89.)

## II

### *Sufficiency of Bonding Study*

Evidence Code section 730 provides:  "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required.  The court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at the amount as seems reasonable to the court.  [¶]  Nothing in this section shall be construed to permit a person to perform any act for which a license is required unless the person holds the appropriate license to lawfully perform that act."

To the extent parents contend, separately, that the bonding study in this case was necessarily inadequate and violated their due process rights because Drs. Gray and Carmichael did not observe a parent-child visit, we first note that neither parent objected to Dr. Carmichael's qualifications, acceptance as an expert in bonding studies, *or* to the

---

**4**    Father did not indicate that he was joining in mother's contention, made in her reply brief, that our opinion in the second appeal, which has since been issued, did not dispose of this issue.

bonding study performed and submitted in this case. Thus, they cannot now claim the study or testimony should not have been admitted into evidence. (Evid. Code, § 353; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1341, fn. 7, as modified on denial of rehg. (June 9, 1997); *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-413.)

Moreover, there is no authority for parents' proposition that a bonding study must, in all circumstances, include an observation of a parent-child visit. Indeed, according to Dr. Carmichael, it is not. Dr. Carmichael, who was received without objection as an expert in bonding studies, testified *at length* as to what information he accessed and used in performing his bonding study, and *specifically explained* why he did not need or observe a parent-child visit in this case. He explained that in most cases, he has observed a parent-child interaction. However, when the case involves younger children who have been out of their parents' care for a significant amount of time and proportion of their ages, "very often the children are not able to articulate, recall or talk about things in the past with regard to the relationship they had with their biological parents. And another consideration is that[,] with such distance in time of not seeing someone, it's very difficult to interpret children's reactions to seeing someone they haven't seen for multiple months or years. So[,] if a child cowers from somebody, that might be something relationship based, or just could be something nagging or unfamiliarity. And so[,] understanding that what ever [*sic*] observation made in a brief period of time may not adequately or accurately inform the status of the current relationship or an established relationship. [¶] And so because of that, those reasons[,] [we] made the determination that had I seen the children with their biological parents it would be difficult to discern what we saw. And for doing the assessment I made the assumption that it would go well because that way there isn't a bias towards thinking it would not have gone well." Thus, Dr. Carmichael testified that, while observing a parent-child interaction is "something to strongly consider," it is not required and he has performed bonding studies, other than in the instant matter, without them.

The courts, unlike Dr. Carmichael, are not experts in bonding studies. It is not the court's task to direct an expert how to perform a bonding study, such as what to consider or how much weight the expert should give to specific considerations or facts. It is, however, within the purview of the juvenile court to determine how much weight to give a bonding study or expert opinion. And nothing prevented parents from arguing the weight that ought to be given to the results of the bonding study, whether based on the experts' decision not to observe a parent-child interaction, or any other basis for which they believed the study's conclusion should not be given persuasive value. We find no due process violation.

DISPOSITION

The orders of the juvenile court (terminating parental rights) are affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
RENNER, J.

/s/
KRAUSE, J.

8