Filed 2/25/14  Owens v. Thayer CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| EMERALD OWENS,<br><br> Plaintiff and Appellant,<br><br> v.<br><br>DOUGLAS B. THAYER et al.,<br><br> Defendants and Respondents. | D063401<br><br><br>(Super. Ct. No. 37-2011-00094728-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Law Offices of John Belcher and John A. Belcher for Plaintiff and Appellant.

Durham, Jones & Pinegar, Douglas B. Thayer and Aaron R. Harris, for Defendants and Respondents Douglas B. Thayer, Marcus Owens, and Hill, Johnson & Schmutz.

Konoske Akiyama & Brust, Gregory P. Konoske and D. Amy Akiyama, for Defendant and Respondent Sandra Hayden.

Plaintiff Emerald Owens (Emerald)[1] appeals a judgment in favor of defendants Douglas Thayer (Thayer), Sandra Hayden (Sandra), Marcus Owens (Marcus), and Hill Johnson & Schmutz, PLLC (the Hill firm) following the trial court's order granting defendants' summary judgment motion. Emerald's complaint alleges causes of action for elder abuse, financial elder abuse, conversion, intentional and negligent infliction of emotional distress, imposition of a constructive trust, malicious prosecution, and abuse of process. These claims arise from an intrafamily dispute involving Emerald's husband Homer Owens (Homer), now deceased, and his adult children. Emerald alleges that Homer's adult children kidnapped him and forced him to file a frivolous divorce action to dissolve his marriage to Emerald. Emerald also alleges that Homer's adult children drained funds from Homer and Emerald's joint banking accounts and otherwise mistreated Homer. This intrafamily dispute gave rise to three lawsuits before Emerald filed the complaint in this action: a California divorce action, a Utah divorce action, and a Utah conservatorship action.

The trial court here found the material facts underlying Emerald's allegations in this lawsuit had already been litigated and determined in the prior Utah state court conservatorship action which involved Homer. In that action, the Utah court made numerous factual findings regarding Homer's condition and status. The Utah court determined that Homer was not kidnapped, was not forced to file for divorce, and was not otherwise mistreated by his adult children. The Utah court further found that Homer

---

[1] To avoid confusion, we refer to certain parties and other relevant individuals by their first names.

voluntarily chose to file for divorce and move away from Emerald and that he was competent to make those decisions at the time. Based on these findings, the trial court here granted summary judgment as to Emerald's complaint because each of her causes of action depend on the allegations that Homer was kidnapped and forced against his will to file for divorce from Emerald and give up control of his finances. The trial court further found Emerald's causes of action were barred by a final stipulation settling Homer's divorce action, in which Emerald gave up certain rights with respect to Homer and his assets.

On appeal, Emerald contends the court erred in applying the collateral estoppel doctrine to bar her complaint. Emerald also contends the trial court erred in interpreting the final stipulation as a release of her claims against the defendants named in this action. Defendants argue that Emerald has shown no error in the court's order granting summary judgment and that alternative grounds also support the order. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Emerald and Homer were married in 2002. Over the years, Homer developed severe dementia and other medical conditions that limited his mobility. Emerald cared for Homer in their home in El Cajon, California. Their marriage appeared happy and strong. It was the second marriage for both Emerald and Homer; their first marriages ended with the deaths of their spouses. Emerald and Homer were against divorce on religious grounds.

Both Emerald and Homer had adult children from their first marriages. Homer's children include Marcus and Sandra, both defendants in this action, and Paula Thayer

3

(Paula), wife of defendant Thayer. Emerald had a warm relationship with Homer's children until the events described herein.

In 2009, Emerald and Homer met with an attorney and prepared new estate planning documents. Homer executed a newly-prepared will, which appointed Emerald executor. A durable power of attorney appointing Emerald as Homer's agent was also prepared, but the record contains only an unsigned copy of the document.

Later that year, Emerald went to Hawaii on vacation with her daughter. Emerald left Homer in the care of two nurses. Sandra traveled from her home in Utah to stay with Homer as well. Family friends who visited Homer shortly after Emerald left reported that Homer appeared agitated and upset. They found it hard to communicate with him.

A few days after leaving for Hawaii, Emerald began to have difficulty reaching Homer. She then received a call from Thayer. Thayer told Emerald that Homer's children had a family meeting and that Homer was filing for divorce from Emerald and moving to Utah. When Emerald asked about Homer's current whereabouts, Thayer told Emerald it was none of her concern and that she had no say in what happened to Homer going forward. Emerald was shocked. Within 20 minutes of Thayer's call, Emerald suffered a debilitating stroke. She was admitted to a hospital in Hawaii, where she underwent surgery and remained for several weeks.

While Emerald was in Hawaii, Homer filed a petition for divorce in San Diego (the California divorce action). (*Owens v. Owens* (Super. Ct. San Diego County, No. ED-78325).) The petition was signed by Homer and his California divorce attorney, James

4

Albert. As grounds for dissolution of Homer's marriage, the petition cited irreconcilable differences. Homer traveled to Utah and began living in a nursing home there.

In Utah, Homer's mental condition deteriorated. Represented by the Hill firm, Thayer filed a petition in Utah state court seeking appointment as Homer's conservator and guardian (the Utah conservatorship action). (*Estate of Owens* (Utah, Utah County, 4th Dist. Ct., Sept. 10, 2009), Probate No. 093400462.) Thayer alleged that Homer was incapacitated at times due to dementia and Parkinson's disease and unable to effectively manage his own property and affairs. In his petition, Thayer argued that Emerald was disqualified to serve as Homer's conservator and guardian based on her stroke and the pending divorce proceedings. The Utah conservatorship court granted Thayer's petition and appointed him as Homer's conservator and guardian.

Around this time, family friends from California visited Homer in Utah. One family friend reported that Homer missed Emerald and wanted to see her. According to this friend, Homer said he did not want to divorce Emerald and that he wanted the divorce proceedings to stop. Kim Owens, Marcus's wife, wrote in an e-mail to her son that "[Homer] expressed that this is the right decision . . . to go to a nursing home in Utah. He said, he'd like Emerald to join him, but when I said 'Dad, she may not want to, she has her health, her home, friends and ward here[']—he said he was okay with her not wanting to join him but this was what he needed[]." (Ellipses in original.) Later, Thayer testified that he was aware Homer still loved Emerald and that Homer sometimes wanted " 'out' " of his assisted living home.

5

After the Utah conservatorship court's decision appointing Thayer, Emerald appeared and challenged the court's order. Emerald alleged that she had not been given notice of the conservatorship proceeding, as required by Utah law. Emerald filed motions seeking to vacate Thayer's appointment, appoint a guardian ad litem for Homer, and obtain certain funds that had been in her joint bank accounts with Homer.[2] Emerald alleged that Homer had been taken from California against his will, forced to file for divorce from Emerald, and otherwise mistreated by his children and Thayer. Emerald's medical expert agreed, however, that Homer was incapacitated and not competent to make decisions for himself at that time.

The Utah conservatorship court conducted a two-day trial, received testimonial and written evidence, and issued detailed findings of fact and conclusions of law regarding Homer's condition and status. Emerald and Thayer were present and represented by counsel; Homer was represented by court-appointed counsel. The Utah conservatorship court confirmed Thayer's appointment as Homer's guardian and conservator, finding that Homer was incapacitated and appointment of a guardian and conservator was appropriate. The court rejected Emerald's challenge to Thayer's appointment, finding that Thayer had been validly nominated by Homer as his chosen guardian and conservator. Homer had also signed papers granting a durable power of attorney to Thayer. The court further held that Emerald, even if she had been nominated,

---

[2] While Emerald was recovering from her stroke, her family discovered that over $50,000 had been transferred out of joint bank accounts held by Emerald and Homer. Emerald was also removed as a beneficiary from Homer's individual retirement account (IRA), valued at almost $200,000.

was not qualified to serve based on her health conditions and her lax attitude towards Homer's medical care.

The Utah conservatorship court also concluded the evidence did not support any mishandling of Homer's guardianship by Thayer or wrongdoing in connection with Homer's move to Utah. The court stated, "The Court finds that Homer made the following lucid, knowing decisions: (1) to leave California and move to Utah, (2) to nominate Mr. Thayer as his agent, guardian, and conservator, and (3) to file for divorce from Emerald." The court further stated, "This Court can comfortably find that Homer was competent in July 2009 to make a decision to move to Utah, to make a decision to nominate Mr. Thayer as his guardian, conservator, and agent, and to make a decision to divorce Emerald." The Utah conservatorship court based its decision in part on the testimony of two individuals: Homer's treating physician who performed an examination of Homer around the time of his divorce filing, and a notary public who witnessed Homer sign his advance health care directive and other documents around the same time. The court further found that Homer and Emerald's funds were comingled in one joint bank account and ordered that approximately $18,000 be returned to Emerald.

In its findings, the Utah conservatorship court reserved two questions: whether Thayer could continue a divorce action on Homer's behalf and whether Thayer could disinherit Emerald. The court conducted additional proceedings to resolve these issues. The court visited Homer and observed Homer's responses to questions posed by his court-appointed attorney, William Jeffs. Thereafter, the court issued supplemental findings of fact and conclusions of law on the reserved issues. The court noted, "Homer

was able to communicate with Mr. Jeffs, although the communication was not a continuing stream of conscious thought." The court reaffirmed Thayer's appointment as guardian and conservator for Homer and specifically found that Thayer's authority included the ability to proceed with Homer's divorce action. However, the court found Thayer did not have the authority under Utah law to make a will for Homer and disinherit Emerald.

Although Homer initially filed for divorce in California, Homer dismissed his California petition without prejudice, and with Emerald's consent, after approximately a year of litigation. Homer, through his conservator Thayer, then filed a new petition for divorce in Utah on the same day that the California petition was dismissed. (*Owens v. Owens* (Utah, Utah County, 4th Dist. Ct., filed Aug. 26, 2010) No. 104402029).) The Utah divorce action was filed in the same court as the Utah conservatorship action, but the actions were assigned to different judges and were not consolidated.

The Utah divorce action ended in a final stipulation between Emerald and Thayer, acting as Homer's guardian. Under the terms of the stipulation, Emerald and Homer remained married, but Emerald waived any claim to Homer's estate and any right to manage Homer's care or person. In exchange, Emerald retained her home in California, including all monies that Homer contributed to it, and $10,000 from their joint checking accounts. A number of other assets, including the disputed IRA, were retained by Homer. Homer and Emerald further "waive[d] any rights they may have at this time with respect to any other financial accounts not mentioned in the Final Stipulation, if any . . . that are in the names of the other party, and/or are . . . jointly in the names of

8

Emerald and/or Homer." The parties agreed that Emerald "will not make any claims, now or in the future, against the Guardian/Conservator in the Conservator action filed in Utah" and that "[n]either Homer Owens nor his Conservator shall make any claim against Emerald or her estate, whether known or unknown, past, present or future." Finally, Emerald agreed to withdraw her appeal of the Utah conservatorship court's order confirming Thayer's appointment as Homer's guardian and conservator. The stipulation was filed in the Utah divorce action, prompting the Utah divorce court to dismiss that action with prejudice. It was also filed in the Utah conservatorship action.

Approximately four months after the stipulation was signed, Emerald filed this action in San Diego County Superior Court. Emerald's complaint contains causes of action for elder abuse, financial elder abuse, conversion, intentional and negligent infliction of emotional distress, and imposition of a constructive trust based on allegations that Homer's children (with the involvement of Homer's California divorce lawyer, James Albert, and Thayer's then law firm, the Hill firm) kidnapped Homer, forced him to file for divorce, moved him to Utah against his will, and wrongfully diverted funds from the couple's joint bank accounts. As a result, Emerald contends she suffered physical, emotional, and financial harm.

Emerald also alleged causes of action for malicious prosecution and abuse of process based on Homer's California and Utah divorce petitions, which Emerald contends contain false and fraudulent representations. These allegedly false representations include the statements that Emerald and Homer were separated following her departure for Hawaii and that there were irreconcilable differences in their marriage. Emerald

9

further alleged two causes of action for elder abuse and financial elder abuse on Homer's behalf, based on similar allegations of kidnapping, forced filing of divorce, and diversion of funds that Emerald had alleged as the basis of the causes of action on her own behalf. Homer passed away while the proceedings below were pending.

During this litigation, Emerald dismissed Homer's California divorce lawyer, James Albert, and one of Homer's children, Paula Thayer, from the case. The remaining defendants, who are all parties to this appeal, filed a motion for summary judgment or, in the alternative, summary adjudication on all of Emerald's claims. The defendants argued that Emerald's claims were barred by collateral estoppel based on the Utah conservatorship court's findings of fact. The defendants further argued that Emerald had waived her claims based on her joint bank accounts with Homer as part of the final stipulation in the Utah divorce action, that Emerald could not assert elder abuse claims on Homer's behalf, and that Emerald otherwise could not establish the factual allegations underlying her claims. Emerald opposed the motion, arguing collateral estoppel was inapplicable, the releases contained in the final stipulation did not extend to the defendants, and Emerald had standing to sue on Homer's behalf.

After considering the parties' papers, the trial court ordered supplemental briefing on two issues: (1) the collateral estoppel effect of the Utah conservatorship court's finding that Homer was competent and (2) the theory of causation applicable to Emerald's emotional distress damages. In response, defendants argued that the Utah conservatorship court's finding that Homer was competent foreclosed all of Emerald's claims because they rely upon the essential allegation that Homer was kidnapped and

10

forced against his will to divorce Emerald, move to Utah, and close the couple's joint accounts. Defendants also argued there was no causal link between closing the couple's accounts and Emerald's emotional distress claims.

Emerald countered that collateral estoppel was inappropriate because the Utah court's findings were made in the context of a conservatorship action, where Emerald could not seek personal injury damages. Emerald also argued that collateral estoppel could not foreclose Emerald's malicious prosecution action because the Utah conservatorship court's findings apply, if at all, only to Homer's decision to initiate the divorce and not to maintain it. Emerald also argued that defendants concealed critical evidence from the Utah conservatorship court, rendering a finding of collateral estoppel inequitable. Regarding her emotional distress damages, Emerald argued that a jury could reasonably infer Homer's alleged kidnapping caused Emerald severe emotional distress, which Emerald contended was manifested by a stroke. Emerald did not reference any direct evidence that her stroke was caused by Homer's kidnapping or any actions of the defendants.

The trial court granted defendants' summary judgment motion. The court stated three alternative grounds. First, the court found collateral estoppel foreclosed all of Emerald's claims: "All of plaintiff's claims against the defendants are premised on the fact that Homer was allegedly kidnapped from California against his will, and that he was allegedly forced to file for divorce from plaintiff and close the couple's bank accounts. The Utah [conservatorship] court's order that Homer was competent, made during proceedings when plaintiff was present and represented by counsel, requires that

11

plaintiff's claims fail."  Second, the court found that "Plaintiff waived any rights with regard to Homer Owens when she entered into the stipulated settlement agreement[,]" and thus all of Emerald's claims were barred for that reason as well.  Third, the court found that summary adjudication was proper on the elder abuse claims that Emerald brought on Homer's behalf because Emerald lacked standing to bring these claims.  The court entered judgment accordingly, and Emerald appeals.[3]

DISCUSSION

I

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law.  [Citation.]  The burden of persuasion remains with the party moving for summary judgment.  [Citation.]  When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true

---

[3]    Emerald's complaint at issue here spawned additional litigation in Utah.  As discussed *ante*, Emerald bases her complaint in part on wrongdoing related to the joint bank accounts held by her and Homer.  Because the final stipulation settling Homer's divorce action addresses Emerald's rights to those same accounts, Thayer filed an action on Homer's behalf in Utah alleging that Emerald breached that stipulation by filing her complaint.  Emerald removed the new Utah action to federal court, which found that Emerald had breached the stipulation and entered partial summary judgment in Thayer's favor.  However, despite Thayer's apparent request, the Utah federal court declined to allow Thayer to pursue an injunction against Emerald's complaint here "based on the principles of comity and the provisions of the Federal Anti-Injunction Act[.]"  (*Thayer v. Owens* (D. Utah, Nov. 29, 2012, No. 2:12-CV-00170-DS).)

12

[citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)

If the defendant "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists, but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action. . . ." (Code Civ. Proc., § 437c, subd. (p)(2).)

"We review the record and the determination of the trial court de novo. [Citation.]" (*Kahn v. East Side Union High School Dist., supra*, 31 Cal.4th at p. 1003.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

"Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiff['s] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned. [Citation.]" (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) Accordingly, the judgment of the trial

13

court is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant who bears the burden of overcoming that presumption and affirmatively showing error. (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1458.)

## II

Emerald contends the trial court erred in applying collateral estoppel, based on the Utah conservatorship court's findings of fact, to bar all of the causes of action in her complaint. We conclude that, with the exception of Emerald's malicious prosecution claim, collateral estoppel bars all of Emerald's causes of action. For her malicious prosecution cause of action, we need not assess the application of collateral estoppel because, as discussed in Part III, Emerald cannot establish an essential element of that cause of action.

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." (*Lucindo v. Superior Court* (1990) 51 Cal.3d 335, 341.) " 'Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]' [Citation.]" (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)

"The doctrine 'rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation.' [Citations.]" (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 89-90.)

## A

Emerald argues that collateral estoppel is inappropriate here because the Utah conservatorship court's findings of fact regarding Homer's desire for a divorce were not necessarily decided in the Utah conservatorship proceedings. (See *Hernandez v. City of Pomona, supra*, 46 Cal.4th at p. 511.) Emerald points to the language of the final stipulation settling Homer's divorce action, that "the parties will remain married," and contends that language contradicts the Utah conservatorship court's factual finding that Homer desired a divorce. Thus, Emerald argues, the Utah conservatorship court's factual findings were not necessary to the final stipulation that ended Homer's divorce action.

" 'In order for the determination of an issue to be given preclusive effect, it must have been necessary to a judgment. This requirement "prevent[s] the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." [Citation.]' " (*McMillin Development, Inc. v. Home Buyers Warranty* (1998) 68 Cal.App.4th 896, 906.) The scope of necessity, however, is broad. An issue is " 'necessarily decided' " if the issue was not " 'entirely unnecessary' to the

15

judgment in the initial proceeding." (*Lucindo v. Superior Court, supra*, 51 Cal.3d at p. 342.)

Here, as an initial matter, we do not agree that the language of the final stipulation contradicts the Utah conservatorship court's finding that Homer was competent and desired to divorce Emerald. The final stipulation reflects the legal status of the parties going forward; it does not have any bearing on the parties' prior desires. Homer could have desired to divorce Emerald, as the Utah conservatorship court found, yet stipulated to continue the marriage for purposes of resolving the contested divorce proceeding. Moreover, Emerald appears to be merging the Utah conservatorship action with the Utah divorce action, which proceeded separately before different judges in the Utah courts. While the Utah divorce action ended with the parties' final stipulation, the relevant findings of fact here were entered by the Utah conservatorship court in the separate conservatorship action. The relevant judgment in the Utah conservatorship action is the conservatorship court's order affirming the appointment of Thayer as guardian and conservator. While the final stipulation was also filed in the Utah conservatorship action, it does not constitute a judgment there.

The Utah conservatorship court's finding that Homer was competent and that he voluntarily decided to divorce Emerald and move to Utah was not entirely unnecessary to its order affirming the appointment of Thayer as Homer's guardian and conservator. (See *Lucindo v. Superior Court, supra*, 51 Cal.3d at p. 342.) Emerald challenged Thayer's appointment, contending that Homer had been kidnapped, that he was forced to file for divorce from Emerald, and that he was moved to Utah against his will. The Utah

16

conservatorship court's rejection of Emerald's allegations, and its affirmative findings of Homer's competence, were not entirely unnecessary to its order affirming its appointment of Thayer and denying Emerald's motions. (*Ibid.*) Indeed, they were directly on point, since Emerald raised those very issues herself in the conservatorship action as grounds to challenge Thayer's appointment. Because Emerald seeks to raise the same issues again in this litigation, the application of collateral estoppel is appropriate.

B

Emerald further argues that the Utah conservatorship court's findings should not be given preclusive effect because the Utah conservatorship court would not have jurisdiction over the causes of action that Emerald asserts here. Emerald notes, "If the particular issue was not presented or was not within the court's power to decide in the first action, it will not be concluded by the judgment." (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 433, p. 1086.) This requirement, however, relates to the court's jurisdiction in the first proceeding over the *issues* before it, not whether the first court's jurisdiction extends to the causes of action asserted in the second proceeding. (*Strangman v. Duke* (1956) 140 Cal.App.2d 185, 191 [" 'A judgment is not an adjudication of those matters which were not and could not properly be relied upon and determined in the previous action, but is conclusive where the requisite jurisdiction exists, of all those matters which it clearly adjudicates.' [Citation.]"].) Emerald does not contend that the Utah conservatorship court did not have jurisdiction to decide the

17

relevant factual issues in the context of the conservatorship proceedings before it.[4]  The factual findings of the Utah conservatorship court may therefore have collateral estoppel effect where the same issues are relevant here.

Emerald further argues her causes of action involve different primary rights than those adjudicated in the Utah divorce action,[5] and thus collateral estoppel is inappropriate.  Emerald claims that *Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603 is "essentially on all fours" with the dispute here.  We disagree.  The court in *Boblitt* considered whether *claim preclusion* would bar a tort cause of action following an adverse judgment in a divorce proceeding.  (*Id*. at p. 613.)  Similarly, *Nicholson v. Fazeli* (2003) 113 Cal.App.4th 1091, also relied upon by Emerald, considered claim preclusion. (*Id.* at p. 1100.)

The relevant doctrine here is collateral estoppel (or issue preclusion), which the *Boblitt* court specifically distinguished:  "Of course, a judgment in a dissolution

---

[4]     Emerald also has not established that the Utah conservatorship court would not have jurisdiction over the causes of action here.  Her bare assertion of the Utah conservatorship court's limited jurisdiction is unsupported by any citation to authority.  As such, we may properly consider it waived.  (*Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956 [" 'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)  Emerald's contentions regarding the jurisdiction of the California court in which Homer's divorce petition was filed are inapposite because the findings of fact at issue were made by the Utah court considering the conservatorship petition involving Homer, not the California court.

[5]     Emerald continues to confuse the conservatorship action, where the Utah court issued the findings of fact that create the estoppel here, with the separate divorce action, which ended in a stipulated settlement.  For the reasons stated, Emerald's argument is unavailing regardless of which prior action is considered.

18

proceeding where claims of domestic violence were, in fact, litigated still may have preclusive effect under the doctrine of *issue* preclusion, which ' "precludes relitigation of issues argued and decided in prior proceedings" ' [citation], even if it does not have preclusive effect under the doctrine of *claim* preclusion."  (*Boblitt v. Boblitt, supra*, 190 Cal.App.4th at p. 614.)  The primary rights analysis, used by the *Boblitt* and *Nicholson* courts to determine whether different causes of action were involved in the two proceedings at issue in those cases, is inapplicable to the doctrine of collateral estoppel because collateral estoppel applies even when different causes of action are asserted in subsequent litigation.  (*Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (1962) 58 Cal.2d 601, 604 [" 'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.'  [Citations.]"]; see also *Nicholson v. Fazeli, supra*, 113 Cal.App.4th at p. 1100 [" '[I]n a new action on a different cause of action the former judgment is a collateral estoppel, being conclusive on issues actually litigated in the former action.' "].)

  *Sosnick v. Sosnick* (1999) 71 Cal.App.4th 1335, upon which Emerald also relies, considered whether a pending civil action may be consolidated with a closed family law matter.  Though Emerald claims the *Sosnick* court determined that "res judicata did not apply[,]" we find no support for Emerald's assertion.  The *Sosnick* court determined that a civil action could not be consolidated with a closed family law matter, and therefore the court that had handled the closed family law matter could not properly decide the merits of the subsequent civil action.  (*Id.* at p. 1340.)  The court did not reach the merits of the underlying civil action, where res judicata was raised as a defense.  (*Ibid.*)

19

C

Emerald argues that even if the facial requirements for collateral estoppel are met, the doctrine should not be applied because of alleged deficiencies in the Utah conservatorship proceedings. Emerald contends that it would be unfair to apply collateral estoppel because the Utah conservatorship court's findings were affected by "[e]xtrinsic fraud" due to Sandra's alleged theft of Homer's 2009 estate planning documents, which prevented them from being considered by that court. Emerald also contends the Utah conservatorship court failed to consider other key evidence, including testimony directly from Homer.

"Even if the minimal requirements for application of collateral estoppel are satisfied, courts will not apply the doctrine if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case [citation], or if the party to be estopped had no full and fair opportunity to litigate the issue in the prior proceeding. " (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82; see *Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 181.)

Even assuming that extrinsic fraud may prevent the application of collateral estoppel in the appropriate case, Emerald's evidence falls far short of raising an inference that fraud occurred here. In her declaration opposing summary judgment, Emerald states: "While I was in Hawaii, Homer's Will and trust documents had been taken from my home. Because Sandra Hayden was at my home while I was away, it is my belief that she took those legal documents. The Will was later obtained through my counsel, but it [was] received too late to be used at the proceedings in Utah." In her briefing, Emerald

20

asserts that "[t]he document was found **after** the Utah proceedings were concluded." (Boldfacing in original.) Emerald cites the 2009 will for that proposition, but the only indicator on the face of the document when it may have been found is the facsimile line, which shows it was transmitted in January 2010, 10 months before the trial in the Utah conservatorship action.[6] Except for Emerald's speculation that Sandra "took" the will, Emerald offers no evidence that the defendants here participated in a fraud, concealed the will, or otherwise prevented the Utah conservatorship court from considering it. Emerald does not explain what she did to obtain the will, either from Sandra or the estate planning attorney who prepared it, and she does not explain whether and under what circumstances she sought to have it admitted in the Utah court. Emerald claims that the Utah conservatorship court did not consider the 2009 will "because of the theft," but she offers insufficient facts to substantiate that assertion.

Moreover, Emerald has provided no authority for the proposition that extrinsic fraud may operate as a bar to collateral estoppel. *In re Marriage of Modnick* (1983) 33 Cal.3d 897, upon which Emerald relies, considered whether the failure of one spouse to disclose the existence of community property assets constitutes extrinsic fraud sufficient to set aside a judgment on direct appeal from that same judgment. (*Id.* at pp. 904-905.) Because the court did not consider the legal doctrine (collateral estoppel) or factual scenario (alleged theft of documentary evidence) at issue here, *Marriage of Modnick* is of

---

6 Emerald submitted the facsimile cover sheet elsewhere in her evidence in opposition to summary judgment. The cover sheet shows that Emerald's estate planning attorney sent the 2009 will to Emerald's daughter in January 2010.

little relevance.  None of the other authority cited by Emerald bears on the alleged fraud at issue here.  (See *Zevnik v. Superior Court, supra*, 159 Cal.App.4th at p. 86 [collateral estoppel cannot be applied based on a trial court's alternate grounds for decision where appellate court affirmed on a single ground]; *Bostick v. Flex Equipment Co.* (2007) 147 Cal.App.4th 80, 97-98 [collateral estoppel cannot be applied where party to be estopped had inadequate incentive to litigate issue in prior proceedings]; *Dunkin v. Boskey, supra*, 82 Cal.App.4th at pp. 181-182 [collateral estoppel cannot be applied where issue decided in prior proceeding was not identical to issue in current proceeding].)

At most, Emerald has potentially identified evidence that was not considered by the Utah conservatorship court.  The court heard evidence regarding Homer's 2002 estate planning documents, as well as a 2002 durable power of attorney that Homer granted to Thayer.  But, as that court explained, "The Court specifically notes that, while evidence was presented that there was an attempt in February 2009 to modify the estate plan, the Court received no competent or authenticated evidence of an actual modification."  The evidence the Utah conservatorship court received regarding the attempt is not clear from the record.

However, "the existence of 'new evidence' normally does not bar the application of collateral estoppel." (*Roos v. Red* (2005) 130 Cal.App.4th 870, 888.)  "An exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence.  Otherwise, there would be no end to litigation." (*Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 748.)  For this reason, the fact that the Utah conservatorship court did not consider the 2009 will does not affect the application of collateral estoppel

22

here. Moreover, Emerald has not shown that the court's consideration of the 2009 will would have affected its findings regarding Homer's competence, since those findings were based on the testimony of professionals who observed and assessed Homer contemporaneously with the divorce filing and other challenged acts.[7]

Emerald also contends that she did not have a " 'full and fair opportunity' " to litigate issues related to Homer's competency in the Utah conservatorship court because Homer was not deposed and did not testify at trial in that action. (See *Zevnik v. Superior Court, supra*, 159 Cal.App.4th at p. 82.) These facts alone do not bear on Emerald's opportunity to litigate in the Utah conservatorship court because they do not show Emerald was prevented from deposing Homer or calling him to trial for testimony, for example. Emerald does not allege that she sought to have Homer deposed or to have him testify at trial, so Emerald may not have pursued such discovery. (See *Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 490 ["[O]nce an issue is litigated and determined, it is binding in a subsequent action notwithstanding that a party may have omitted to raise matters for or against it which if asserted might have produced a different outcome."]; see also *Frommhagen v. Bd. of Supervisors* (1987) 197 Cal.App.3d 1292, 1301 [collateral

---

[7] Emerald's reference to two other pieces of allegedly "new" evidence not considered by the Utah conservatorship court is similarly unavailing because, as noted *ante*, such "new" evidence does not defeat the application of collateral estoppel. (See *Evans v. Celotex Corp., supra*, 194 Cal.App.3d at p. 748.) Moreover, the trial court below sustained defendants' evidentiary objection to one of the two pieces of evidence cited by Emerald. We note that each of the parties to this appeal has cited evidence to which an evidentiary objection was sustained, but none of the parties has argued that the court erred in sustaining any objection. We disregard any evidence to which objections have been sustained. (See *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1138.)

estoppel applies " 'even though some *factual* matters or *legal* arguments which could have been presented in the prior case . . . were not presented' ".) Under these circumstances, we cannot conclude that Emerald did not have a full and fair opportunity to litigate in the Utah conservatorship action.

Emerald has not shown that the defensive application of collateral estoppel here would be unjust or unfair. (See *Zevnik v. Superior Court, supra*, 159 Cal.App.4th at p. 82; *Dunkin v. Boskey, supra*, 82 Cal.App.4th at p. 181.) We therefore decline to find error on these grounds.

D

Emerald also contends the trial court erred by allegedly taking judicial notice of the truth of the Utah conservatorship court's findings. In its order granting summary judgment and summary adjudication, the trial court noted that "it is not taking judicial notice of the truth of the matters expressed in the Utah court's Findings of Fact and Conclusions of Law, but of the existence of the Order that found Homer Owens competent when he decided to leave California and filed for divorce from plaintiff." Nonetheless, Emerald argues that the trial court's application of collateral estoppel here necessarily takes judicial notice of the truth of the Utah conservatorship court's factual findings.

"While we may take judicial notice of the *existence* of judicial opinions, court documents, and verdicts reached, we cannot take judicial notice of the truth of hearsay statements in other decisions or court files [citation], or of the truth of factual findings made in another action [citations]." (*Johnson & Johnson v. Superior Court* (2011) 192

24

Cal.App.4th 757, 768.) However, as the authorities cited by Emerald explain, the application of collateral estoppel does not require judicial notice of the truth of a court's factual finding. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1569; *Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1050-1051.) Emerald's argument "appears to improperly merge the doctrine of judicial notice with the doctrines of res judicata and collateral estoppel. Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time." (*Sosinsky v. Grant, supra*, 6 Cal.App.4th at p. 1569.) Where the requirements for application of the doctrine are satisfied, collateral estoppel will bar relitigation of an issue regardless of whether the issue was rightly decided in the prior action. (*Ibid.*)

Here, the trial court took judicial notice of the existence of the Utah conservatorship court's findings of fact and conclusions of law. Judicial notice of the existence of court records is proper to evaluate whether collateral estoppel applies. "To determine whether to preclude relitigation on collateral estoppel grounds, judicial notice may be taken of a prior judgment and other court records." (*Rodgers v. Sargent Controls & Aerospace, supra*, 136 Cal.App.4th at p. 90.) Emerald's contention that the court erred in doing so has no merit.

### E

Emerald further argues that defendants have not offered competent evidence sufficient to sustain their motion for summary judgment and summary adjudication. Emerald asserts that the central issue in the lawsuit is Homer's intent, and defendants

25

have not offered any evidence directly from Homer. Emerald does not cite any legal authority in support of her argument.

Emerald's bare assertion that defendants have not offered competent evidence does not explain why collateral estoppel should not apply here. "Summary judgment is an appropriate remedy when the doctrine of collateral estoppel refutes all triable issues of fact suggested by the pleadings and supporting documents." (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1335.) Similarly, Emerald's contention that the trial court erred in granting summary judgment because defendants did not offer evidence directly from Homer regarding his intent to divorce Emerald ignores the effect of collateral estoppel. That doctrine precludes relitigation of Homer's intent when it has already been litigated and determined in a prior proceeding. (See *Lucindo v. Superior Court, supra*, 51 Cal.3d at p. 341; *Rodgers v. Sargent Controls & Aerospace, supra*, 136 Cal.App.4th at pp. 89-90.) Moreover, as discussed, the doctrine of collateral estoppel applies regardless whether relevant evidence was omitted from the prior proceeding. (See *Frommhagen v. Bd. of Supervisors, supra*, 197 Cal.App.3d at p. 1301.) Because Emerald has not shown why collateral estoppel should not be applied in this case, we conclude the trial court properly invoked the doctrine here.

III

Emerald argues that even if collateral estoppel is found, the factual findings of the Utah conservatorship court cannot bar her malicious prosecution action because the Utah court's findings bear only on Homer's initial intent to file for divorce, not his intent or competence to maintain the divorce actions. "[A] conservatee may not *maintain* a

26

dissolution action unless 'capable of exercising a judgment, and expressing a wish, that the marriage be dissolved on account of irreconcilable differences.' [Citation.]" (*In re Marriage of Straczynski* (2010) 189 Cal.App.4th 531, 540-541.) Emerald asserts in her briefing here that if Homer did not have ongoing intent or competence to maintain the divorce actions, the divorce actions lacked probable cause. (See *ibid.*; see also *Zamos v. Stroud* (2004) 32 Cal.4th 958, 970 ["[A]n attorney may be held liable for malicious prosecution for continuing to prosecute a lawsuit discovered to lack probable cause."].)

We note initially that Emerald does not appear to have alleged in her complaint that *maintenance* of either divorce action constitutes malicious prosecution. "The complaint limits the issues to be addressed at the motion for summary judgment. . . . If a plaintiff wishes to expand the issues presented, it is incumbent on the plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258; see *Robinson v. Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108, 1132.) Moreover, Emerald has not provided any discussion of what law would govern Homer's Utah divorce action, and whether the same requirements would apply to maintenance of the action there, so it is unclear whether Emerald's argument applies to the Utah divorce action at all. We note that in the Utah conservatorship action, the court specifically found that Thayer's authority as Homer's guardian and conservator "includes the power for Mr. Thayer to proceed with Homer's currently pending divorce action in Utah."

In any event, even if Emerald had properly alleged malicious prosecution based on maintenance of the divorce actions, and even if improper maintenance were a valid

27

theory of malicious prosecution as to both actions, we need not reach the merits of Emerald's argument because the undisputed evidence shows that Emerald cannot establish an essential element of a cause of action for malicious prosecution: legal termination of the underlying action on the merits in Emerald's favor. (See *Zamos v. Stroud, supra*, 32 Cal.4th at p. 965.) Although the trial court did not discuss this element in its order granting summary judgment and summary adjudication, we may properly affirm on this ground. "The appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court, providing the facts are undisputed. [Citations.] Thus we must affirm so long as any of the grounds urged by [defendants], either here or in the trial court, entitle [them] to summary judgment. [Citation.]" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1595.)

Assessing whether a prior action ended with a favorable termination on the merits requires examination of the circumstances surrounding the termination of the action. For example, "a dismissal resulting from a settlement does not constitute a favorable determination because ' . . . the dismissal reflects ambiguously on the merits of the action as it results from the joint action of the parties, thus leaving open the question of defendant's guilt or innocence. [Citation.]' [Citation.] After all, '[t]he purpose of a settlement is to *avoid* a determination of the merits.' [Citation.]" (*Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1814; see also *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1526, fn. 5 ["[A] case dismissed with prejudice pursuant to a

28

settlement agreement would . . . not [be] a favorable termination for malicious prosecution purposes."].)

Here, defendants argue that neither the California nor the Utah divorce actions ended in legal termination on the merits in Emerald's favor. We agree. The California divorce action was dismissed without prejudice and with the consent of Emerald's attorney. "A dismissal resulting from negotiation, settlement, or *consent* is generally not deemed a favorable termination of the proceedings." (*Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827, fn. 4 [italics added].) Because Emerald consented to the dismissal of the California divorce action (and it was immediately refiled in Utah), that dismissal cannot be interpreted as a favorable termination on the merits under the circumstances here. (See *ibid.*) The Utah divorce action ended in a final stipulation that maintained the couple's marriage but reflected compromises regarding Homer's care and assets. The fact that maintaining the marriage was one of Emerald's "key goals," as Emerald argues, does not make such a compromise settlement a favorable legal termination on the merits. "[W]here, as here, termination is by way of an agreement by the parties, there is ambiguity with respect to the merits of the proceeding and in general no favorable termination for purposes of pursuing a malicious prosecution action occurs." (*Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 828.) Settlement of the Utah divorce action, by way of the final stipulation, precludes a finding of favorable termination on the merits. (See *ibid.*) Summary adjudication of Emerald's malicious prosecution cause of action was therefore appropriate based on the lack of a favorable

29

legal termination on the merits regardless of whether collateral estoppel applies. (See *Pender v. Radin, supra*, 23 Cal.App.4th at p. 1817.)

IV

We conclude Emerald has not shown the trial court erred in granting summary judgment on her complaint. The trial court properly applied the collateral estoppel doctrine to bar Emerald's causes of action for elder abuse, financial elder abuse, conversion, intentional and negligent infliction of emotional distress, imposition of a constructive trust, and abuse of process. We further conclude that Emerald's cause of action for malicious prosecution fails as a matter of law, regardless of whether collateral estoppel applies, on the ground that neither the California nor the Utah divorce action ended in a favorable legal termination on the merits in Emerald's favor. As such, we need not consider Emerald's argument that the trial court erred by granting summary judgment on the alternative ground that the final stipulation settling Homer's Utah divorce action barred Emerald's claims.

We note that Emerald has not challenged the trial court's third alternative ground, lack of standing to sue on behalf of Homer. Emerald has therefore waived any claim of error as to her causes of action on behalf of Homer, which provides a separate alternative ground to affirm the trial court's order granting summary adjudication of those causes of action. (See *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177 ["[F]ailure to address summary adjudication of a claim on appeal constitutes abandonment of that claim."].)

Finally, we need not address the numerous additional alternative grounds for affirmance urged by defendants, many of which go unrebutted by Emerald in her reply.

DISPOSITION

The judgment is affirmed.  Appellant to bear respondents' costs on appeal.



HALLER, J.

WE CONCUR:


NARES, Acting P. J.


McINTYRE, J.

31