Filed 12/4/20  Wilson v. Gonzalez CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| LANNY WILSON, | |
| Plaintiff and Appellant, | E071587 |
| v. | (Super.Ct.No. RIC606707) |
| MARISA GONZALEZ, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Affirmed.

The Law Office of Jeff Grotke and Jeff Grotke for Plaintiff and Appellant.

The Law Offices of Vincent Miller and Vincent Miller for Defendant and Respondent.

1

While in the hospital awaiting surgery, Paul Wilson[1] drafted a will and left his entire estate to a friend, Marisa Gonzalez. After Paul died, his estranged brother, Lanny Wilson, initiated a will contest in which he claimed he was Paul's rightful heir, and that Gonzalez had convinced Paul to execute a will entirely in her favor through fraud and undue influence. Some doubt was raised in the probate court whether the will contest was timely filed. Lanny filed this lawsuit against Gonzalez asserting causes of action for financial elder abuse and tortious interference with a right of inheritance. Essentially, the lawsuit made the same claim Lanny had made in the probate court, i.e., Gonzalez robbed him of his right to inherit Paul's estate under the default intestate laws. The probate court eventually concluded the will contest was timely, but Lanny did not dismiss his duplicative lawsuit.

After the probate court rejected Lanny's will contest and appointed Gonzalez as the administrator of Paul's estate, Gonzalez moved for summary judgment in this case. Lanny opposed the motion and requested leave to amend his complaint and allege a new cause of action for negligent elder abuse on the basis that Gonzalez caused Paul's death by withholding needed dialysis treatment. The trial court found no good cause, denied Lanny's request, and thereafter granted summary judgment for Gonzalez.

Lanny appeals from the judgment against him. However, he failed to designate some of the most pertinent portions of the record, such as Gonzalez's motion for summary judgment and his memorandum of points and authorities in opposition thereto.

---

[1] We will refer to the decedent and his brother by their first names, in the interest of clarity. We mean no disrespect.

2

We subsequently granted Lanny's and Gonzalez's motions to augment the record on appeal, but even those augmentations have not completely rectified Lanny's oversight. And Lanny did not file a reply brief or oppose Gonzalez's request to dismiss the appeal as frivolous.

Although we agree with Gonzalez that this appeal lacks merit, we decline to dismiss it. Lanny's cause of action for financial elder abuse was essentially duplicative of the claims he made in the will contest. This court affirmed the judgment in the will contest in toto, and that opinion is now final. (*Estate of Wilson* (Mar. 5, 2020, E070066) [nonpub. opn.].) We now conclude Lanny's cause of action is barred under the doctrine of collateral estoppel. Although the trial court granted Gonzalez's motion for summary judgment on a different ground, the result was correct.

Moreover, although generally a party may amend their complaint at any time, and courts must liberally allow amendments to pleadings, the trial court correctly denied Lanny's eleventh-hour bid to defeat summary judgment, finding that the proposed cause of action for negligent elder abuse was time-barred. On this record, we find no abuse of discretion.

Therefore, we affirm the judgment.

I.

FACTS AND PROCEDURAL BACKGROUND

Paul was admitted to the hospital on the morning of November 6, 2013, and he was scheduled for surgery that afternoon. With his attending nurse and Gonzalez as his witnesses, Paul dictated to Gonzalez the terms of his will. He left his entire estate to

3

Gonzalez. The same day, Paul executed a durable power of attorney for health care decisions and an all-purpose power of attorney, granting Gonzalez power of attorney over him. (*Estate of Wilson*, *supra*, E070066.)[2] Paul died in mid-January 2014. He had been divorced and had no issue. Thereafter, Gonzalez petitioned the probate court to be appointed as administrator of Paul's estate. (*Ibid*.)

Lanny filed a will contest on May 23, 2016, in which he: (1) objected to Gonzalez's appointment as administrator; (2) petitioned to have himself appointed as administrator; and (3) requested a declaration that the purported will was invalid, Paul died intestate, and his estate should pass according to the intestate laws (i.e., to Lanny). Lanny alleged Paul was a dependent adult, Gonzalez was Paul's caregiver, and Gonzalez promised Paul she would train to administer his dialysis treatment, so she could curry favor with and influence him. According to Lanny, Gonzalez's conduct and status as Paul's caregiver gave rise to multiple presumptions of undue influence in the execution of the will. Moreover, Lanny alleged Paul lacked legal capacity to execute the purported will, and the document did not actually express testamentary intent.

Eight days later, Lanny filed the complaint in this case alleging causes of action for financial elder abuse (Welf. & Inst. Code, § 15610.30) and tortious interference with an inheritance. Like the will contest, the complaint alleged that Gonzalez took advantage

---

[2] We grant Gonzalez's unopposed request to take judicial notice of our decision in *Estate of Wilson*, *supra*, E070066. (Evid. Code, §§ 452, 459.) We may rely upon our unpublished decision because, as explained, *post*, "the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel." (Cal. Rules of Court, rule 8.1115(b)(1).)

4

of her caregiver relationship to fraudulently procure a will, which "was not the genuine product of the decedent's intent." Specifically, with respect to the cause of action for financial elder abuse, Lanny alleged Gonzalez: (1) wrongly transferred to herself the title to four or five valuable classic cars (and perhaps a small plane too) belonging to Paul that otherwise would have been part of the estate; (2) forged Paul's signature on checks made out to herself; (3) wrongfully, fraudulent, and through undue influence convinced Paul to execute a will giving Gonzalez his entire estate; and (4) breached her fiduciary duty to Paul by procuring gifts for herself while holding herself out as a trusted caregiver and confidant. In short, Lanny alleged Gonzalez robbed him of his rightful inheritance.

Apparently, Lanny filed his complaint in the first place because there was some doubt whether the will contest was timely filed. At a hearing conducted on August 24, 2016, the probate court overruled Gonzalez's demurrer to the will contest and expressly ruled the contest was timely filed. However, Lanny did not dismiss his duplicative complaint.

"After a '[bench] trial [that] took about a year,' during which several witnesses testified, the probate court denied Lanny's will contest, granted Gonzalez's petition, found Paul's will was valid . . . and appointed Gonzalez as administrator of Paul's estate."[3] (*Estate of Wilson*, *supra*, E070066.) Relevant here, the probate court concluded

---

[3] Lanny had successfully petitioned the probate court to appoint David Wilson, a private professional fiduciary, as administrator of the estate. In its judgment, the probate court also granted Gonzalez's request to remove David Wilson as administrator.

5

Gonzalez had rebutted by clear and convincing evidence presumptions of fraud and undue influence in the execution of Paul's will.

While Lanny's appeal from the judgment in the will contest was pending before this court, Gonzalez moved for summary judgment on Lanny's cause of action for elder abuse.[4] Gonzalez argued there was no genuine dispute of material fact that she was entitled to judgment in her favor because: (1) Lanny lacked standing to bring a cause of action for financial elder abuse; and (2) he was collaterally estopped from bringing his claim because the probate court had already decided the exact same issues and found no merit to Lanny's assertion that Gonzalez had used undue influence, fraud, menace. or oppression to procure Paul's will.

Lanny's initial response to the motion was to request leave to file a first amended complaint (FAC). In addition to the existing claim for financial elder abuse, the FAC purported to state a new cause of action for negligent elder abuse (Welf. & Inst. Code, § 15610.57, subd. (a)) based on Gonzalez's failure to provide Paul with needed dialysis treatment. In his memorandum of points and authorities, Lanny claimed his lawsuit had remained largely stagnant as the will contest proceeded and, while prosecuting the contest, he learned some "disturbing" facts, to wit: Gonzalez had promised to train to administer dialysis as a condition of the Veteran's Administration discharging Paul from the hospital; and, although Gonzalez began such training, she did not administer dialysis

---

[4] Earlier, the trial court had granted in part Gonzalez's anti-SLAPP motion and struck Lanny's cause of action for tortious interference with an inheritance. Lanny did not appeal from that order.

6

to Paul, and he died two months later of septic shock. In addition, Lanny argued the judgment in the will contest did not bar him from pursuing his claims because the probate court proceeding involved a different primary right.

Gonzalez opposed the motion, arguing Lanny did not act diligently in requesting leave to amend, he did not explain why he waited so long to seek leave to amend, his purported cause of action for negligent elder abuse was barred under the applicable two-year statute of limitations, and leave to amend would be prejudicial to Gonzalez.

The trial court denied Lanny's request for leave to file a FAC because: (1) the motion did not comply with rule 3.1324 of the California Rules of Court, because, inter alia, he did not identify by page and line number the additions and deletions to the complaint; (2) he lacked standing to bring a cause of action for negligent elder abuse; and (3) it appeared the purported cause of action for negligent elder abuse was time-barred, Lanny had "not pleaded the application of the discovery rule," and it appeared the new cause of action did not relate back to the original complaint.

Lanny filed a separate statement of undisputed material facts and an appendix of exhibits in opposition to Gonzalez's motion for summary judgment, but the register of actions does not reflect he filed a memorandum of points and authorities. Gonzalez filed a reply, which tends to indicate she was *served* with an opposition memorandum. But Lanny did not designate that his opposition be included in the clerk's transcript, and it was not included in his or in Gonzalez's requests to augment the record on appeal either. If the evidentiary objections included in Lanny's separate statement are any indication, it

would appear Lanny once again argued the judgment in the will contest had no preclusive effect.

In a tentative decision, which the trial court adopted after hearing argument,[5] the court took judicial notice of the judgment and statement of decision in the will contest, but it declined to rule that Lanny's cause of action for financial elder abuse was barred by collateral estoppel, because the "will challenge has notably been appealed and is not a final judgment."

The trial court disagreed with Gonzalez's assertion that Lanny lacked standing to bring his cause of action for financial elder abuse. Nonetheless, the court concluded Gonzalez had met "her initial burden to demonstrate that there is no merit to the cause of action . . . by submitting evidence to demonstrate that she did not take or retain any of [Paul's] property for a wrongful use and further demonstrating that [Lanny] lacks any contrary evidence." Moreover, the court concluded Lanny "fail[ed] to meet his burden to demonstrate a triable issue of material fact" in that he "offer[ed] no evidence to demonstrate that [Gonzalez] took, secreted, appropriated, obtained or retained any of [Paul's] real or personal property for a wrongful use or with the intent to defraud." Specifically, the court found insufficient evidence to support Lanny's claim that Gonzalez forged checks because, inter alia, Gonzalez wrote and cashed the checks under "a valid power of attorney, which [Lanny] has not challenged in this action."

---

[5] Lanny did not designate that a transcript of the hearing—if it was transcribed—be included in the record on appeal.

8

Four days after granting Gonzalez's motion for summary judgment, the trial court took Lanny's motion for reconsideration of the order denying his request for leave to file a FAC off calendar. Thereafter, on August 24, 2018, the trial court issued a formal order granting Gonzalez's motion for summary judgment and entered judgment for her.

Lanny timely appealed.

## II.

## DISCUSSION

*A.      The Trial Court Properly Granted Summary Judgment for Gonzalez on Lanny's Cause of Action for Financial Elder Abuse.*

Lanny contends the trial court erred by declining to rule on his objections to the evidence submitted by Gonzalez in support of her motion for summary judgment, and there are triable issues of material fact, which precluded summary judgment. Because Lanny did not properly state his evidentiary objections in a separate document, the trial court did not abuse its discretion by declining to rule on them. And, although the trial court correctly declined to grant summary judgment for Gonzalez on the ground Lanny's claim for financial elder abuse was barred under the doctrine of collateral estoppel, we conclude his claim is so barred, and summary judgment was properly granted.

### 1.      Standard of review.

Code of Civil Procedure section 437c, subdivision (c), provides that summary judgment is to be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A defendant "moving for summary judgment bears an initial burden of production

9

to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant may meet this burden either by showing one or more elements of a cause of action cannot be established or by showing there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)

If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 850.) "[T]o meet that burden, the plaintiff '. . . shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.) Ultimately, the moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, at p. 850.)

""""Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] '"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

10

"We owe the superior court no deference in reviewing its ruling on a motion for summary judgment; the standard of review is de novo. [Citation.] Furthermore, '[i]t is axiomatic that we review the trial court's rulings and not its reasoning.'" (*Coral Construction*, *Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.) Therefore, we ask "'whether the judge reached the right *result* . . . whatever path he [or she] might have taken to get there, and we decide that question independently of the trial court.'" (*County of San Mateo v. Superior Court* (2017) 13 Cal.App.5th 724, 729-730.)

2.     *The trial court properly declined to rule on Lanny's evidentiary objections.*

In support of her motion for summary judgment, Gonzalez filed a separate statement that set forth 66 undisputed material facts. Many of those material facts referred to earlier rulings in the case and to testimony and findings from the will contest. In his responsive separate statement, Lanny disputed almost all those material facts *and* interposed objections to much of the evidence Gonzalez had relied upon. He did not file written evidentiary objections as a separate document.

The trial court declined to rule on Lanny's evidentiary objections because they were "inappropriately included in the response to the Separate Statement."[6] We cannot determine whether Lanny restated his objections orally because, as already noted (see, *ante*, fn. 5), he did not request that a transcript of the hearing be included in the record on appeal. In his brief, Lanny contends the trial court erred by not ruling on his objections

---

[6] Curiously, the trial court stated it overruled "Objection [No.] 69." There was no such objection.

11

simply because they were included in his responsive separate statement.  He argues it was enough that he made them in writing.  We find no abuse of discretion.

Code of Civil Procedure section 437c requires a party opposing summary judgment to file a separate statement that, inter alia, responds to the material facts set forth in the moving party's separate statement and indicates whether the opposing party agrees or disagrees with the moving party's material facts.  (Code Civ. Proc., § 437c, subd. (b)(3); see Cal. Rules of Court, rule 3.1350(e)(1), (f).)  Objections to the moving party's evidence must be made "at the hearing" or they are deemed waived.  (Code Civ. Proc., § 437c, subd. (b)(5).)  By rule, the opposing party must file written evidentiary objections or arrange for a court reporter to be present at the hearing and make the objections orally.  (Cal. Rules of Court, rule 3.1352.)  Unless the court orders otherwise for good cause, written objections must be filed and served with the opposition papers. (*Id*., rule 3.1354(a).)

The summary judgment statute is silent whether a party may include evidentiary objections in their separate statement, but the California Rules of Court expressly prohibit that practice.  "All written objections to evidence *must* be served and filed *separately from the other papers in support of or in opposition to the motion*.  Objections to specific evidence must be referenced by the objection number in the right column of a separate statement in opposition or reply to a motion, *but the objections must not be restated or reargued in the separate statement*."  (Cal. Rules of Court, rule 3.1354(b), italics added; see *id*., rule 1.5(b)(1) ["'Must' is mandatory."].)

12

"The rules requiring evidentiary objections to be filed separately and not repeated in the separate statement are to allow the trial court to consider each piece of evidence and all of the objections applicable to that piece of evidence separately." (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 9 (*Hodjat*).) "[I]nterposing objections into the separate statement defeats the goal of allowing the trial court to quickly and efficiently determine what particular piece of evidence is admitted and what is not. This is because the separate statement is focused on individual facts, which may be supported by the same or different pieces of evidence. A trial court would be forced to wade through all of the facts in order to rule on a particular piece of evidence." (*Ibid.*)

By not filing his written evidentiary objections as a *separate document* and, instead, by inserting them into his responsive separate statement, Lanny did not properly interpose his objections, and the trial court did not abuse its discretion by declining to rule on them. (*Hodjat*, *supra*, 211 Cal.App.4th at pp. 8-9 [trial court did not abuse discretion by declining to overlook deficiency in opposing parties' written objections set forth in separate statement and declining to permit them to reformat objections in separate document]; see *Universal City Studios Credit Union v. CUMIS Ins. Society, Inc.* (2012) 208 Cal.App.4th 730, 734, fn. 1 [including evidentiary objections in separate statement, "as opposed to a *separate document raising only objections*, was improper"].)

Nonetheless, Lanny requests that this court "consider and rule on all relevant objections." Assuming for the sake of argument that Lanny properly made his objections in the first place, they are deemed to have been overruled by the trial court. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 ["[I]f the trial court fails to rule expressly on

specific evidentiary objections, it is presumed that the objections have been overruled, the trial court considered the evidence in ruling on the merits of the summary judgment motion, and the objections are preserved on appeal."].) Lanny argues that, by not ruling on his objections, the trial court improperly considered "unsettled determinations" from the will contest, "which ought not to have any evidentiary value." But the findings in the will contest are now final and settled. And, as explained, *post*, they fatally undermine Lanny's cause of action for financial elder abuse. Therefore, we conclude the objections were properly overruled.

> 3. *Gonzalez was entitled to judgment as a matter of law because Lanny's cause of action for financial elder abuse was barred under the doctrine of collateral estoppel.*

Inter alia, Gonzalez moved for summary judgment on the ground the judgment in the will contest had a preclusive effect in this lawsuit under the doctrine of issue preclusion. The trial court wisely declined to grant Gonzalez's motion on that basis because the judgment was still on appeal. "Under California law, a judgment 'is not final for purposes of res judicata during the pendency of and until the resolution of the appeal.'" (*The Inland Oversight Committee v. City of San Bernardino* (2018) 27 Cal.App.5th 771, 780.) However, while this appeal was pending, we affirmed the judgment in the will contest, and the remittitur has since issued. (*Estate of Wilson*, *supra*, E070066 [remittitur issued June 8, 2020].) In other words, the probate court's judgment is now final. To repeat, we may affirm the summary judgment if it is correct *on any*

14

*ground*, including on the ground of issue preclusion.[7]  (*County of San Mateo v. Superior Court*, *supra*, 13 Cal.App.5th at pp. 729-730.)

Res judicata is often used "as an umbrella term encompassing both claim preclusion and issue preclusion, which [is] described as two separate 'aspects' of an overarching doctrine.  [Citations.]  Claim preclusion, the ""'primary aspect'"" of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties.  [Citation.]  Issue preclusion, the ""'secondary aspect'"" historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit."  (*DKN Holdings*, *LLC v. Faerber* (2015) 61 Cal.4th 813, 823-824.)  "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  (*Id.* at p. 825.)  When applicable, the doctrine of issue preclusion advances the public policies of "conserving judicial resources and promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation."  (*Murray v. Alaska Airlines*, *Inc.* (2010) 50 Cal.4th 860, 879.)

"'Summary judgment is an appropriate remedy when the doctrine of collateral estoppel refutes all triable issues of fact suggested by the pleadings and supporting

---

[7]  Because, in their briefs, the parties did not address whether an affirmance of the judgment in the will contest would have a preclusive effect in this case and would constitute an alternative ground to affirm the summary judgment, we invited them to file supplemental briefs on that question.  (See Code Civ. Proc., § 437c, subd. (m)(2).)

documents.'" (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 88; accord, *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1326 ["'The defense of res judicata not only is properly raised by a motion for summary judgment but also is a proper ground upon which to grant a summary judgment.'"].)

There is no serious dispute here that three of four elements of issue preclusion are met:  the judgment in the will contest was a final adjudication of Lanny's claims about the circumstances under which Paul executed his will and whether the will expressed testamentary intent; those issues were "actually litigated" in the probate court; and issue preclusion would be asserted against Lanny, the party who initiated the will contest and is the plaintiff here.[8]  (*DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824.)  The only question is whether the issues decided in the will contest and the issues raised by Lanny's complaint are identical.  (*Ibid*.)  "The identical issue requirement for issue preclusion addresses whether identical factual allegations are at stake, 'not whether the

_____

[8]  Unlike in the trial court, Lanny now seems to argue that, in addition to there being a difference between the primary rights involved in the two actions, issue preclusion does not apply because it would not be asserted against him but essentially against *Paul*, someone who for obvious reasons was not a party to the will contest. Because Lanny could only maintain the elder abuse claim in the capacity of Paul's representative, intestate heir, successor in interest, or as an "interested person" (Welf. & Inst. Code, § 15657.3, subd. (d)), at a minimum, he and Paul are in privity for purposes of issue preclusion.  (See *Arias v. Superior Court* (2009) 46 Cal.4th 969, 985 ["Collateral estoppel . . . operates only against those who were parties, or in privity with parties, to that prior litigation and who are thus bound by the resulting judgment."]; *Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 399 ["'Privity involves a person so identified in interest with another that he represents the same legal right.'"].)  Therefore, the requirement of the same party or their privy is satisfied.

ultimate issues or dispositions are the same.'" (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 534, quoting *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.)

As he did in the trial court, Lanny argues the judgment in the will contest has no preclusive effect on his cause of action for financial elder abuse because the will contest involved different primary rights. Relying primarily on *Estate of Dito* (2011) 198 Cal.App.4th 791, Lanny argues that, whereas the primary right at issue in the will contest was his right to inherit from Paul, the primary right at stake in this case is *Paul's* right not to be victimized by elder abuse.

*Estate of Dito* is distinguishable. There, the probate court determined the respondent was a surviving spouse of the decedent and entitled to receive a share of his estate. (*Estate of Dito*, *supra*, 198 Cal.App.4th at pp. 796-797.) The Court of Appeal affirmed the judgment. (*Id*. at p. 797.) After issuance of the remittitur, the decedent's daughter and son-in-law filed a petition in the probate court alleging the respondent had committed financial elder abuse against the decedent and, therefore, should be deemed to have predeceased the decedent and not take from the estate. (*Id*. at pp. 797-798.) The probate court sustained the respondent's demurrer to the petition without leave to amend, concluding the primary rights at stake in the prior final judgment and in the petition were identical—the respondent's entitlement to receive a share of the estate as surviving spouse—and, therefore, the petition was barred under the doctrine of issue preclusion. (*Id*. at pp. 798-799.)

The appellate court held that the primary rights at issue were not the same and, therefore, the trial court erred by concluding the petition was barred by issue preclusion.

17

"The primary right at issue in the former proceeding was [the respondent's] own right . . . to receive a share of the decedent's estate as an omitted spouse." (*Estate of Dito*, *supra*, 198 Cal.App.4th at p. 801.) The issues in that proceeding included the validity of the decedent's marriage to the respondent and the validity of a spousal waiver contained in a prenuptial agreement. (*Id*. p. 802.) In contrast, "the primary right addressed by the petition [filed by the decedent's daughter and son-in-law] is that of [the decedent] not to be abused or defrauded. This primary right belongs to [the decedent] and interested persons entitled to assert that right on his behalf." (*Ibid*.) The court held the allegations of financial elder abuse "have no bearing upon the determination of whether [the respondent] is an omitted spouse entitled to receive a share of [the decedent's] estate." (*Ibid*.) Moreover, the court noted the request to find the respondent to have predeceased the decedent "does not affect or threaten the prior determination that [the respondent] is a surviving omitted spouse" and entitled to take her share from the estate, although that share would necessarily be limited or even completely offset by any damages that might be awarded against her. (*Id*. at p. 804.)

Here, in contrast, Lanny's cause of action for financial elder abuse *did* raise the same issues that were already addressed in the will contest, i.e., Gonzalez's alleged fraud and use of undue influence over Paul to obtain a will favorable to her and to control his property. Lanny did not merely allege Gonzalez fraudulently transferred title to Paul's property and pilfered his bank account, which caused *Paul* damage. Instead, the complaint alleged Gonzalez raided property and money that should have been part of the *estate* that he should have inherited. For instance, the complaint alleges Gonzalez

18

transferred to herself title to automobiles, "secreting them *from the Estate*." (Italics added.) To make this clearer, Lanny alleged the classic automobiles "should be property of the Estate," and Gonzalez's "willful, outrageous and oppressive" conduct "was intended to *deprive the Estate* of those vehicles." (Italics added.) Finally, the allegations of financial elder abuse were not segregated from the allegations related to the cause of action for tortious interference with an inheritance that was previously dismissed. To the contrary, in the actual claim for financial elder abuse, Lanny alleged, "Gonzalez wrongfully and fraudulently, using undue influence, caused the decedent to execute a 'Living Will,' which she now construes as giving her all of his property."

This case is more like *Murphy v. Murphy* (2008) 164 Cal.App.4th 376. In that case, the probate court granted a petition to enter a substituted judgment ratifying and funding a revocable living trust and pour-over will for William, a former conservatee. The estate instruments disinherited his son, William, Jr., and designated his daughter Maureen as successor trustee. (*Id*. at pp. 383, 390-392.) The petition argued that the living trust reflected William's testamentary intent, he had and continued to have the capacity to form such an intent and knew the nature of his assets, and "the living trust and pour-over will were not the result of fraud or undue influence by 'any party' and reflected William's testamentary intent and estate plan." (*Id*. at p. 390.)

After William's death, William, Jr., filed a civil lawsuit against Maureen, as trustee, alleging William and his predeceased wife Elaine (mother to both parties) had orally promised that whichever of them survived would leave their estate to William, Jr., and Maureen equally. (*Murphy v. Murphy*, *supra*, 164 Cal.App.4th at p. 392.)

19

William, Jr., alleged his sister "exerted undue influence over William after Elaine's death," and the son sought a judgment rescinding and nullifying the living trust and pour-over will. He alleged Maureen wrongly held title over William's assets "as a result of [her] undue influence over William." (*Ibid*.) Maureen filed a motion in limine arguing, inter alia, the causes of action were barred by the doctrine of issue preclusion because the probate court had already decided the validity of William's estate plan and concluded there was no undue influence exerted upon him. (*Id*. at p. 393.) After a trial, the trial court concluded, inter alia, the issue of undue influence had not been tried in the probate case, so issue preclusion did not apply. (*Ibid*.) The trial court went on to find for William, Jr., on his claims, concluding his disinheritance was the result of Maureen's undue influence over William. (*Id*. at pp. 393-394.)

The appellate court held that William, Jr.'s claims were barred by issue preclusion. Relevant here, the Court of Appeal concluded William, Jr.'s lawsuit tried to relitigate the same issues of fraud and undue influence, which had already been finally decided in the probate court. The "complaint seeks to 'rescind and nullify' William's living trust and pour-over will. According to the complaint, these testamentary dispositions resulted from William's breach of an oral testamentary agreement between William and Elaine, and from appellant's fraud, undue influence and interference with the oral testamentary agreement. William's substituted judgment petition alleged that his living trust and pour-over will 'were executed by [William] freely and are not the result of fraud or undue influence by any party,' and that those instruments reflected his testamentary estate plan. *The factual issues of undue influence and fraud are expressly identical in the instant and*

20

*prior proceedings*. The factual issue of whether the dispositive provisions of the living trust and pour-over will reflected William's estate plan were also at stake in both the instant action and the substituted judgment proceeding." (*Id*. at p. 400, italics added; see *id*. at pp. 400-404 [concluding issues of fraud and undue influence were either "actually litigated" in the probate proceeding or could have been raised in that proceeding].)

So too here. Lanny's cause of action for financial elder abuse raises the same issues of fraud and undue influence by Gonzalez over Paul regarding the creation of his will (and the disposition of assets that would otherwise have been included in his estate), which have already been finally decided against Lanny in the will contest. And unlike in *Estate of Dito*, *supra*, 198 Cal.App.4th at page 804, a judgment for Lanny on his financial elder abuse claim *would* threaten the validity of the now-final judgment in the will contest.

In sum, we conclude Lanny's cause of action for financial elder abuse is barred by issue preclusion.[9] The summary judgment for Gonzalez, therefore, must be affirmed.

---

[9] Lanny seeks to invoke the "manifest injustice" exception to collateral estoppel. He claims it would be unfair and unjust to apply the doctrine here because Gonzalez was subject to an elder abuse restraining order in a separate proceeding. But the manifest injustice exception is normally invoked when collateral estoppel is being used to bar relitigation of legal versus factual issues, the party to be barred was not a party to the prior action or had no meaningful opportunity to litigate the issue in the prior case, and/or barring the current claims would prevent a judicial determination of an issue that is important to the wider public. (See, e.g., *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 621-622; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829-830.) This case presents neither of those situations.

21

B.	*The Trial Court Did Not Abuse Its Discretion by Denying Lanny Leave to*
*Amend.*

Last, Lanny argues the trial court erred by denying his request for leave to file a FAC and denied him due process of law by not conducting a hearing on his motion for reconsideration. For purposes of this appeal, we will deem the order taking Lanny's motion for reconsideration off calendar to be an order denying the motion. (See *American Advertising & Sales Co. v. Mid-Western Transport* (1984) 152 Cal.App.3d 875, 877, fn. 1 [on appeal from dismissal of first amended complaint following grant of summary judgment, appellate court treated order "taking the motion for leave to file an amended complaint off calendar as a denial of that motion"].) We find no abuse of discretion.

A trial court has wide discretion to allow amendment of any pleading, and its ruling will be upheld unless a manifest or gross abuse of discretion is shown. (Code Civ. Proc., § 473, subd. (a)(1); *Record v. Reason* (1999) 73 Cal.App.4th 472, 486; *Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 135-136.) Even if a reviewing court might have reached a different conclusion had it reviewed in the first instance the request for leave to amend, the trial court's order will not be reversed unless, as a matter of law, it is not supported by the record. (*M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012) 202 Cal.App.4th 1509, 1534.) The party challenging the order bears the burden of demonstrating an abuse of discretion. (*Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1147.)

Generally, leave to amend is liberally granted, but appellate courts have affirmed the denial of leave when the proposed amendment clearly lacks merit, when there has been an unreasonable or unexplained delay in presenting the amendment, or when the opposing party will be prejudiced by the amendment. (See, e.g., *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280 [denial affirmed because party seeking leave was not diligent in offering an amendment despite knowledge of the facts]; *Congleton v. National Union Fire Ins. Co.* (1987) 189 Cal.App.3d 51, 62 [leave to amend properly denied because proposed amendment failed to state facts sufficient to constitute a cause of action]; *Cain v. State Farm Mut. Auto. Ins. Co.* (1976) 62 Cal.App.3d 310, 315 [denial was justified because unwarranted delay would have prejudiced opposing party, such as by delaying trial or requiring additional discovery].)

Relevant here, when deciding whether to grant leave to amend, a court need not blind itself to the timelines of proposed causes of action. "Leave to amend is in general required to be liberally granted [citation] provided there is no statute of limitations concern." (*Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 412.) "[L]eave to amend need not be granted if any possible amendment would inevitably be barred by the statute of limitations. 'The law neither does nor requires idle acts.' (Civ. Code, § 3532.)" (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1011; accord, *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1281-1282 [There was no abuse of discretion by a trial court in denying leave to file an amended complaint because "the bar of the statute of limitations affecting the survivor cause of action was not cured by the proposed amendment. Nor could it have been by further amendment."].)

23

The trial court essentially gave three reasons for denying Lanny leave to file a FAC, but we need only address one. In his motion for reconsideration, Lanny cured his initial failure to comply with rule 3.1324(a) of the California Rules of Court, and the trial court subsequently concluded Lanny *did* have standing to sue for elder abuse. However, we conclude the trial court correctly ruled the proposed cause of action for negligent elder abuse was time-barred, the new cause of action did not relate back to the original complaint, and Lanny did not plead facts to trigger the discovery rule.

The elder abuse statute contains no statute of limitations, so Lanny's proposed cause of action for negligent elder abuse was subject to the general two-year statute of limitations applicable to causes of action for "injury to, or for the death of, an individual caused by the . . . neglect of another." (Code Civ. Proc., § 335.1; see *Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 125-126 [§ 335.1 "is facially applicable to elder abuse actions"]; Banke & Segal, Cal. Practice Guide: Civil Procedure Before Trial Statutes of Limitations (The Rutter Group 2020) ¶ 4:326, p. 4-38 [so noting].) Paul died in mid-January 2014, but Lanny did not move for leave to file his proposed FAC until July 2018.[10] Therefore, Lanny's proposed cause of action for negligent elder abuse is time-barred unless it relates back to the original complaint or Lanny properly pleaded facts to trigger application of the discovery rule.

---

[10] The original complaint was also filed more than two years after Paul died. Gonzalez did not argue below that the original complaint itself was untimely filed for purposes of the relation-back doctrine, and the trial court did not rule on that question. For purposes of this appeal, we will assume Lanny's proposed cause of action for negligent elder abuse would have been timely had he pleaded it in the original complaint.

"Where the statute of limitations has expired before the filing of an amended complaint, unless an amended complaint relates back to a timely filed original complaint, the amended complaint will be time-barred." (*Curtis Engineering Corp. v. Superior Court* (2017) 16 Cal.App.5th 542, 548.) "'The relation-back doctrine requires that the amended complaint must (1) rest on the *same general set of facts*, (2) involve the *same injury*, and (3) refer to the *same instrumentality*, as the original one.'" (*Branick v. Downey Savings & Loan Assn*. (2006) 39 Cal.4th 235, 244.) Relation back is appropriate when the amendment is "a restatement, revision, amplification or correction of the allegations of the original complaint, or a change of legal theory. It is essential to distinguish between a new cause of action arising out of 'the same general set of facts' and a new cause arising out of different facts." (*Wiener v. Superior Court* (1976) 58 Cal.App.3d 525, 528-529.)

The facts pleaded in the original complaint all relate to Gonzalez's alleged skulduggery in obtaining a favorable will from Paul, how she abused his trust to take his personal property, and how those facts allegedly made out a cause of action for financial elder abuse. The FAC does not merely plead a different theory of liability based on those same general facts. Instead, the FAC pleads, for the first time, Gonzalez made certain promises to train in the administration of dialysis as a condition of Paul's release from the hospital, she started that training but never completed it, she failed to give Paul the dialysis he needed, and he died two months later of septic shock. Because the FAC pleads a *new* cause of action based on *new and different* facts, it does not relate back to the original complaint.

25

Nor does the discovery rule apply. "A cause of action accrues, and the limitations period begins to run, when '"the cause of action is complete with all of its elements"' [citation]. Under certain circumstances, however, the accrual of the action may be postponed and the running of the limitations period tolled 'until the plaintiff discovers, or has reason to discover the cause of action. [Citations.] [¶] A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period.'" (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 960.) "A plaintiff relying on the discovery rule must *plead* '"(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence."' [Citation.] Plaintiffs have an obligation to *plead* facts demonstrating reasonable diligence." (*WA Southwest 2*, *LLC v. First American Title Ins*. *Co*. (2015) 240 Cal.App.4th 148, 157, some italics added, quoting and citing *Fox v. Ethicon Endo-Surgery*, *Inc*. (2005) 35 Cal.4th 797, 807-808.)

As the trial court correctly noted, Lanny did not plead facts in his proposed FAC to support application of the discovery rule. For example, he did not plead when he learned about Gonzalez's alleged promises to train for and administer Paul's dialysis, when he learned of Gonzalez's failure to follow through on her promises, and if he could have learned those facts sooner through the reasonable exercise of due diligence.

Nor did Lanny file a declaration under penalty of perjury in support of his request for leave to amend or in support of his motion for reconsideration that averred facts to

26

support the application of the discovery rule.[11]  Instead, Lanny's *attorney* filed a declaration in support of the motion for reconsideration, and stated "[s]ome of the new facts pleaded [in the FAC] were known previously," but it was not until the trial in the will contest that he learned the facts to support a cause of action for negligent elder abuse.  But, to repeat, *Lanny himself* did not declare under penalty of perjury when he personally discovered the facts underlying the new cause of action for negligent elder abuse and if he could have reasonably learned them sooner.  Therefore, we must conclude Lanny did not plead application of the discovery rule, and his proposed cause of action for negligent elder abuse was time-barred.

Because the two-year statute of limitations had run on Lanny's proposed cause of action for negligent elder abuse, the relation-back doctrine did not apply, and Lanny did not plead facts to trigger application of the discovery rule, we conclude the trial court did not abuse its discretion by denying Lanny leave to file a FAC.  In addition, because Lanny did not show "new or different facts, circumstances, or law" (Code Civ. Proc., § 1008, subd. (a)) to avoid the time bar, the trial court correctly denied his motion for reconsideration, albeit implicitly.

---

**11** As noted, a plaintiff who wishes to rely on the discovery rule must *plead* facts in their complaint to trigger application of the rule.  (*WA Southwest 2*, *LLC v. First American Title Ins*. *Co*., *supra*, 240 Cal.App.4th at p. 157.)  We do not mean to suggest, and we do not decide, that an affidavit or declaration under penalty of perjury from the plaintiff setting forth such facts would constitute a proper substitute for *pleading* those facts.  (See *Mangini v. Aerojet-General Corp*. (1991) 230 Cal.App.3d 1125, 1150 ["Whether the discovery rule applies at all is initially a matter of pleading."].)  Instead, we discuss the absence of a declaration from Lanny merely to further underscore his failure to make a showing that the discovery rule should apply.

## III.

## DISPOSITION

The judgment is affirmed.  Defendant and respondent Marisa Gonzalez shall recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


RAMIREZ
P. J.


RAPHAEL
J.

28